N. F. MILLER, Appellee, v. DONALD KING et al., Appellants.

No. 47463.

(Reported in 39 N.W. 2d 307)

OCTOBER 18, 1949.

F. J. MacLaughlin, of Davenport, for appellant Donald King.

Carl H. Lambach, of Davenport, for appellant Pete Hedgepath.

Waldo M. Wissler, of Davenport, for appellee.

MULRONEY, J.—This is an automobile-accident case tried to the court which resulted in a judgment for plaintiff. These are the facts which the trial court found, upon which he based his judgment.

Plaintiff was driving his automobile east on a paved highway in the daytime at a speed of approximately fifty miles per hour. Defendant Hedgepath was driving his coupé west on the same highway at a speed of about thirty miles per hour and defendant King was driving his truck west about fifty feet behind Hedgepath. The highway was straight and one could see for several hundred feet in each direction and the pavement (eighteen feet wide) was dry. The trial court's written findings state:

"At a time when plaintiff's car was approaching within about 300 feet of Hedgepath's car Hedgepath applied his brakes, slowing abruptly, and pulled off onto the north shoulder of the road. He gave no arm signal of his intention to stop or turn but his stop lights lighted when he applied his brakes and King observed them. Hedgepath stopped his car about one foot off the paved slab and opened the left door of his car; the door was about three feet wide and extended over the north half of the pavement about two feet when it was opened.

"At the same time King slowed his truck to about 20 miles per hour, swerved across the center line of the road three or four feet and traveled a distance of about 100 feet with the left side of his truck across the center line while going around Hedgepath's car.

"By the time Hedgepath opened his door and King swerved across the center line plaintiff was within 100 feet of them; he swerved his car to his right so that it was about three or four feet out onto the south shoulder of the road; at the same time

he applied his brakes; his car started weaving, hit a mailbox on the south shoulder of the road and overturned.

"Plaintiff's car was damaged to the extent of $438.90 in the upset; an outboard motor he was carrying in the car was damaged to the extent of $18.75 and plaintiff suffered personal injury necessitating medical attention, to his damage in the amount of $3.00."

Upon the above findings the trial court rendered judgment against both defendants for $460.65. Both defendants served notice of appeal but only defendant Hedgepath filed a brief. The two errors which defendant Hedgepath relies upon for reversal in the filed brief are: "I. The findings of fact and recovery allowed thereon against appellant Hedgepath are utterly without support in the evidence. II. The findings of fact and conclusions of law are not within the issues as tried and are not responsive to issues legally permissible for the court to consider."

I. The first assignment involves the sufficiency of the evidence to sustain the trial court's findings of fact. When considering findings of a court in a law action tried without a jury we will not weigh the evidence or the credibility of the witnesses. Such findings are entitled to the same weight as the verdict of a jury. If the findings are supported by substantial evidence they will not be disturbed on appeal. In re Estate of Puckett, 240 Iowa 986, 1001, 38 N.W. 2d 593, 601, and cases there cited.

Plaintiff testified:

"The day was clear, sunshiny. I was traveling about fifty miles an hour. There was a lot of traffic coming out of town and there was a car in front of us; had been in front of us for quite a while. The brakes and steering gear on my car were in good shape. As we came along by the Wyanet Dairy Farm, the first thing we knew, there was a truck pulled out on our side of the road, across the dividing line. A Missouri car [Hedgepath's coupé] had stopped on the highway and this fellow [King] pulled out from behind the Missouri car with a truck. The first thing we knew there was a car on our side of the highway; the truck was there. In order not to hit him, we

pulled off the highway and in coming back off the shoulder onto the pavement, our car went out of control, and as' we passed the driveway to the Wyanet Dairy we hit a mailbox which turned us around and headed us in the opposite direction and we fell over on our side. We ended up laying on our left side in the ditch on our right-hand side of the road. I'd say I was about a hundred feet or so away when I noticed the Missouri car stop and the truck pull over to my side of the road. There was quite a lot of cars coming toward us on the highway before the accident. The first thing we noticed was that somebody had stopped and this car pulled out. I later identified them as the King truck and the Hedgepath car."

Plaintiff's passenger testified:

"The first thing I remember seeing was the truck swaying out. We were about a hundred feet away then. The truck's front end was over the line. It was on our side of the road. The front end of the truck was mainly on our side of the road. I didn't notice that either the coupé or the truck were slowing down; I just noticed the truck swerved out. When the truck swerved out Mr. Miller tried to turn, tried to get off on the side of the road to keep from hitting. His right side just pulled off on the shoulder. His left wheels did not go off on the shoulder at all until he hit the mailbox there. As we drove along there on the shoulder, there is a driveway going into this dairy farm. The shoulder along the side of this driveway is somewhat narrower than a car is."

Defendant Hedgepath testified:

"Some little time before I came to this particular point I had noticed that the car was heating up and had reduced my speed with the expectation of when I come to a place where I could pull off of the highway, why, I would pull off, and when I came to a wide shoulder there where I could pull off, why, I immediately started to pull off of the highway. Possibly I was traveling twenty to twenty-five miles an hour. I had applied my brakes farther back down the road to reduce my speed and I applied the brakes as I moved off of the highway. At that time

there was a car approaching me 150 or 200 yards down the road. As I decelerated my speed, that distance was diminished. After I got off of the highway onto the shoulder and was far enough off of the highway that I could open my left-hand door to step out, a truck went by me and rolled down the road possibly sixty to seventy yards—maybe fifty yards—and he pulled off the highway onto the shoulder, with the exception of one wheel, as I remember it, still on the highway, and· I stepped out of my car and went to· the front of the car."

Hedgepath also stated that he gave no· signal as he started to slow down and pull out on the shoulder other than the rear red lights which went on with his brakes, and that his left wheels were four feet from the paving when he stopped on the shoulder and his left door was possibly three feet wide and that the truck when it went by missed his open car by normal passing distance.

King, the truck driver, testified: "When he [Hedgepath] pulled off the road, as far as I can remember, he was clear off. As I passed him if I pulled over to the left side of the lane at all it was very little. I don't believe I ever at any time got to· the left of the center line ·of the road."

There was other evidence that after the accident Hedgepath's car was on the shoulder with his left wheels a foot from the paving and if he opened his left door it would have swung out over the pavement.

The foregoing testimony amply sustains the trial court's findings. The damages were the subject of a stipulation between the parties. There is no merit in the first assignment of error.

■ II. We are told in argument that the second assignment of error, which strikes us as being quite general, raises the specific question as to the right of the plaintiff to amend his petition at the close of all of the testimony. The argument of defendant Hedgepath is that plaintiff's testimony describes a situation where Hedgepath stopped his car on the pavement and the amendment to the petition states that Hedgepath "stopped his car upon the paved portion of the highway, or stopped his car so closely adjacent to the right-hand edge of the pavement and opened the left-hand door thereof in such manner that the

door partially blocked the north half of the pavement." But the petition which framed the issues did not specify where Hedgepath stopped his car. It states: "Hedgepath suddenly stopped his car without signalling; defendant Donald King swerved his truck suddenly to his left and over and upon plaintiff's right-hand side of said highway, immediately in front of plaintiff's car." The findings were well within the issues raised by the petition. The amendment was unnecessary. While the petition did not suggest that the opening of the door was a factor in the accident, the fact remains it did in effect allege Hedgepath's stopped car caused King to swerve to his left. Whether he was made to swerve by a stopped closed car or a stopped car with the left-hand door open is immaterial under the allegations of the petition. The petition was broad enough to cover either event.

While we have reviewed this assignment and held it without merit because the amendment was unnecessary, we desire to point out that a party should raise such an issue in the trial court by either resistance to the motion to amend or a motion to strike the amendment if it is filed before opportunity for resistance. Here there was no written resistance filed to the motion to amend and no written motion to strike the amendment and we are left in doubt as to whether the trial court ever heard the objections which the defendant Hedgepath makes in this court.

Finding no error, the judgment is affirmed against both defendants.—Affirmed.

All JUSTICES concur.