BERNARD BREITENKAMP, appellee, v. COMMUNITY COOPERATIVE ASSOCIATION, Webster City, appellant.

No. 50534.

APRIL 3, 1962.

Lund & Lund, of Webster City, for appellant.

Guthrie & Blackburn, of Webster City, for appellee.

SNELL, J.—This is a law action for damages resulting from alleged breach of warranty. The trial court, sitting without a jury, rendered judgment for plaintiff and overruled defendant's subsequent motions. Defendant has appealed.

Plaintiff is a farmer and cattle feeder.

Defendant prepares, mixes and sells feed for livestock and promotes the sale of its product through sales representatives.

In December 1958 plaintiff bought 59 thrifty western calves delivered to his farm in Hamilton County to be raised and fattened for market. Previously and until March 1959, plaintiff used Quaker Oats cattle feed with success. In March 1959 plaintiff changed to defendant's feed, a mixture of corn and protein supplement, and used this feed until August 4 or 5 when he changed back to Quaker Oats feed. By August 14 the cattle were "in bad condition". According to plaintiff, he "never saw such a sick bunch of steers." Under treatment by a veterinarian the cattle improved and were marketed in October 1959. Plaintiff claims his cattle suffered from a dietary deficiency resulting from defendant's feed and that he was damaged to the extent of extra feed cost and veterinary expense.

It should be kept in mind that this is a warranty and not

a negligence case. Plaintiff's claim is not bottomed on alleged negligence. The trial court found that there was a warranty by defendant, a breach of warranty and computable damages.

I. The court's findings of fact have the effect of a special verdict. Rule 334, Rules of Civil Procedure; Miller v. King, 240 Iowa 1336, 39 N.W.2d 307.

"Our only duty is to review the record to see if the trial court's findings are supported by substantial evidence." Augusta v. Jensen, 241 Iowa 697, 699, 42 N.W.2d 383, 384; Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 1132, 97 N.W.2d 168; Ver Steegh v. Flaugh, 251 Iowa 1011, 103 N.W.2d 718.

The issues were well stated by the trial court. We quote: "The three elements of plaintiff's case are (1) warranty, (2) breach, and (3) damages."

II. Was there a warranty and a reliance thereon?

Defendant's salesman was an acquaintance and friend of plaintiff. He had two years college training, was an experienced farmer, buyer and seller of livestock, a feeder, herdsman and showman. He specialized in the livestock field. He persuaded plaintiff to change to defendant's product. Plaintiff testified that the salesman "stated that his feed would do more than the feed that I was using at a cheaper rate of gain—cheaper cost of gain. * * * Well, they would like to feed my cattle and they showed me ways where they could feed them cheaper than I was feeding at the present time. * * * They said they'd set up the feeding program and the feed was delivered then in their bulk truck to a self-feeder. * * * The reason I switched from one feed to another was the fact that Community Coop. said that they could furnish me feed considerably cheaper. * * * That it was to contain all the ingredients that would make for profitable gain on cattle." Plaintiff was to furnish water, hay and salt; otherwise defendant furnished the entire feeding ration. Plaintiff "left everything entirely up to Bob Faint, because I figured if he was in the feeding business he knew what exactly they should be fed." Mr. Faint was defendant's salesman.

The feed furnished by defendant was crimped corn with 35% cattle supplement with vitamin A added. Defendant's

salesman admitted that the addition of more vitamin A was one of defendant's selling points.

Our statutes on warranty are a part of the sales law in chapter 554 of the Code.

Section 554.13 provides: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

An implied warranty of fitness is created by section 554.16 in these words: "Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

The trial court found: "Here the cattle were doing well on another brand of feed. The seller induced plaintiff to change brands by representing that its feed would do more for less money, in other words, that the cattle would do even better than before. In reliance on the seller's representations, plaintiff bought the new brand. It is unnecessary to say whether there was an express or an implied warranty, for there was one or the other, or both, and in any such event plaintiff's first element is established."

Under the evidence we cannot disturb this finding.

III. Was there a breach of warranty? The problem is factual. There was evidence in considerable detail as to vitamin A, the possible cause or causes of the cattle's condition and the great care of defendant in preparing its product. An analysis by us of the technical problems incident to vitamin A would

make no contribution to the advancement of science or jurisprudence.

Again we quote from the trial court's finding:

"Now, no one doubts that the cattle got sick. The evidence persuades the Court that the cause was Vitamin A deficiency. The veterinarians said that such deficiency was what ailed the stock, and added Vitamin A brought about a cure.

"\* \* \*

"Previous to the introduction of defendant's feed, the cattle, and other cattle, were on another brand of feed, and there was no trouble. After leaving off defendant's feed, the cattle were returned to the old brand, and there was no trouble. Moreover, at about the time plaintiff left off using defendant's feed, defendant doubled the units of Vitamin A in its product. The Court, acting in place of the jury, finds as a fact that defendant's feed did not measure up to the warranty."

About the middle of August plaintiff noticed that the cattle were sick. Local veterinarians were called. Their diagnosis was vitamin A deficiency, a dietary deficiency over a period of time. The cattle showing the most symptoms were treated with injectable vitamin A, and all were given an increase of vitamin A in the feed. The cattle responded slowly and their condition improved.

In addition to the testimony of local veterinarians who treated the cattle, plaintiff offered the testimony of Dr. Walter Woods of Iowa State University. He has advanced degrees in animal nutrition, is a member of professional and research organizations and is an expert in the field of nutritional needs of beef animals. The many facets of vitamin A in cattle feeding were explained, including its source, natural and synthetic, the need of it and the amount needed, its stability, the results from its absence and the time element in symptoms showing a deficiency. Doctor Woods and the local veterinarians were competent expert witnesses and their opinions were admissible in evidence.

The landmark case in this field is Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646. Subsequent cases have followed the Grismore case without deviation.

As pointed out in Bradshaw v. Iowa Methodist Hospital, 251

Iowa 375, 383, 101 N.W.2d 167, the Grismore opinion deals with the admissibility, not the sufficiency, of expert opinions as to causation.

In the instant case the cattle were sick. There was expert opinion testimony as to the nature and cause of the sickness, and added vitamin A brought about a cure. The trial court found as a fact that defendant's feed did not measure up to the warranty. We quote:

"This is a warranty case, not a negligence case. Plaintiff is not saying that defendant ought to have anticipated what happened. What plaintiff is saying is that defendant warranted in substance that its feed would do the job. Under the law, defendant had to make good on the warranty, and absence of negligence is no defense. Greenwood Cotton Mills v. Tolbert, 105 S. C. 273, 89 S.E. 653; Patterson v. Orangeburg Fertilizer Co., 117 S. C. 140, 108 S.E. 401. See also Cavanaugh v. Spring Valley Stock Farm Co., 206 Iowa 893, 221 N.W. 512.

"Then defendant objects that the feed industry will be penalized for progress and will not be able to experiment with new products without incurring legal liability. Not at all. The law favors initiative and enterprise. But the experimenter who brings a product to the market and unequivocally affirms that it will do the job is held to his affirmation when buyers are thereby induced to purchase. All that he has to do to avoid liability is to refrain from leading buyers into beliefs which the results will not support. He can even go further as is sometimes done and provide that there are no warranties express or implied. The law exacts forthrightness. If competition seems to compel the seller to go further, he cannot complain when he is held to what he leads buyers to believe, whether he acts with scienter or innocently."

There was evidence to support the trial court's findings of fact as to breach of warranty.

IV. There was evidence that the cattle's development to market condition was delayed. The feed cost was found by the court to be $50 per day for 33 extra days. The veterinary expense was $86.50. The court found the damages to be the total of those items, i.e., the sum of $1736.50.

In Jaeger v. Hackert, 241 Iowa 379, 390, 391, 41 N.W.2d

42, a breach of warranty action for loss by death of turkey poults, there was a question of proof of damage. The plaintiff testified as to the value of labor and the cost of feed, gas, oil, litter and medicine for the entire flock. We said: "* * * The evidence furnished the jury the dates when the poults died. It also furnished the jury the reasonable value * * * of feed, * * *. This gave the jury about all of the information that could be given as to the value of labor and cost of feed, * * *. We think it furnished the jury sufficient evidence by which it could measure the damage, * * *."

See also Doden v. Housh, 251 Iowa 1271, 1277, 105 N.W.2d 78.

In the instant case plaintiff testified as to the number of extra days required to bring the cattle to market condition and the feed cost per day. The trial court saw fit to accept this evidence and the amount of veterinary expense as the measure of damage. We find no error.

V. Defendant offered evidence to show the care with which its product was prepared. Absence of negligence is not a defense to an action for breach of warranty. In Ver Steegh v. Flaugh, supra, at page 1025 of 251 Iowa, we said: "In an action for breach of warranty it is not necessary for the buyer to show scienter on the part of the seller or that he knew the warranty was false [citations]."

VI. Shortly after July 30, 1959, plaintiff paid defendant what he owed. About 10 days later the cattle's sickness was noted. Defendant claims this payment constituted a settlement of plaintiff's claim. We do not agree. Payment of the purchase price after knowledge of the breach of warranty may raise a presumption against the validity of a claim for damages but not when there is no knowledge of the breach. Keniston v. Todd, 139 Iowa 287, 117 N.W. 674.

The defendant knew plaintiff's cattle were sick. Plaintiff told defendant about his trouble. The cattle were in the feed lot until October. Defendant had ample opportunity to inspect them. Defendant's claim of lack of notice of their condition is not tenable.

After plaintiff had rested, the court permitted an amendment to the prayer of the petition to conform to the proof. This

was within the discretion of the trial court. Rule 88 and rule 192, Rules of Civil Procedure.

The points relied on for reversal relate mainly to the sufficiency of the evidence to support the findings of the court. The evidence was sufficient for submission to a jury. The findings of fact are supported. We find no error.

The case is—Affirmed.

All JUSTICES concur.