EDITH MINEKE, executrix of estate of William C. Mineke, deceased, plaintiff, v. CHAUNCEY JOSEPH FOX, defendant-cross-petitioner, appellant; H. F. MAURER, cross-petitioning defendant, appellee.

No. 51127.

(Reported in 126 N.W.2d 918)

MARCH 10, 1964.

Hart, Shulman, Phelan, Tucker & Ivie and Daniel W. Boyle, all of Iowa City, for appellant.

Jack C. White, of Iowa City, for appellee.

Will J. Hayek, of Iowa City, for plaintiff.

STUART, J.—The actual contestants in this action are Fox

and Maurer. Plaintiff's parked car was damaged when struck by Fox's car which had gone out of control after colliding with Maurer's car. Plaintiff commenced action against Fox. Maurer was brought into the case on Fox's motion. Fox filed a cross-petition against Maurer seeking indemnity or contribution in one count and compensation for damages to his automobile in another count. Plaintiff amended her petition to allege Maurer's negligence and the concurring negligence of Fox and Maurer. Before trial, it was stipulated that plaintiff was entitled to recover $517.41 from either one or both Fox and Maurer and the case was tried to the court for its determination of liability as between Fox and Maurer.

The trial court found in favor of Maurer and Fox appealed, claiming (1) the findings, verdict and judgment were not supported by the evidence and constitute an abuse of discretion, (2) Maurer was guilty of negligence as a matter of law, (3) the trial court erred in failing to grant Fox's motion for judgment notwithstanding verdict and motion for new trial on the ground that Maurer had pleaded last clear chance which was an admission of negligence.

The accident occurred at 4:30 p.m., November 30, 1961, at the intersection of Washington Avenue and Gilbert Street in Iowa City. Washington Avenue is a thoroughfare running east and west, and is protected by STOP signs on Gilbert Street, which intersects it at right angles. Fox, 71, was driving his car in a westerly direction on Washington. Maurer, 74, entered Washington Avenue from the south after stopping at the STOP sign. The collision occurred in the northeast quadrant of the intersection. The throttle on the Fox car jammed wide open and the car went out of control striking several parked cars, including plaintiff's, before running into a building.

The trial court found Fox "failed to establish by a preponderance of the evidence each and all of the alleged grounds of negligence on part of Maurer. The evidence shows that the cross-defendant Maurer obeyed the STOP sign, exercised proper lookout, was in his own lane of traffic, and had proceeded cautiously (maybe too cautiously) and the front part of his car had crossed north of the center line of Washington and that his car

was at a dead stop when cross-petitioner Fox's car struck Maurer's car. That the evidence shows that Fox had not seen Maurer's car until within two feet of it and that said cross-petitioner Fox was guilty of negligence in the following respects: In failing to keep a proper lookout; in failing to have his car under control, and driving at an excessive rate of speed."

Upon Fox's motion the court enlarged its findings to state: "There was evidence in the record that defendant cross-petitioner Fox at and immediately prior to the accident was traveling at a rate of 40 miles per hour. In the opinion of the court in view of the heavy traffic, the width of the street, and of other conditions then existing, said speed was unreasonable and improper, and that the same necessarily had considerable to do with the control of said person's car." The court also specifically found Maurer was not guilty of any contributory negligence.

I. "When considering findings of a court in a law action tried without a jury we will not weigh the evidence or the credibility of the witnesses. Such findings are entitled to the same weight as the verdict of a jury. If the findings are supported by substantial evidence they will not be disturbed on appeal." Miller v. King, 240 Iowa 1336, 1338, 39 N.W.2d 307.

Were we free to weigh the evidence and consider the credibility of the witnesses, we probably would have reached a different result from that of the trial court. There is evidence from Fox, his wife and two completely independent witnesses which contradicts almost every material finding of the trial court. Support for these findings can be found only in the testimony of Maurer himself, for no other witnesses testified on his behalf and he received no assistance from the independent witnesses. We will consider whether Maurer's evidence is sufficient to support the court's findings. He testified:

"At the time of the accident I was driving North so that if Gilbert is the North-South street that is the street which I was on. There was a STOP sign at this intersection on November 30, 1961, and as I proceeded North and reached Washington Street I stopped for the STOP sign at Washington and Gilbert Street. As I came to the intersection I stopped and I drove up slow and I looked East and I didn't see a car coming at all and I started

on. That is I was driving and this flash, I saw it to the right of me. I socked the brakes down and stopped. I stopped for the STOP sign and then went on ahead very slowly. I don't think I was—well, I wasn't moving at all when he hit me.

"Q. You said something about a flash. What was the flash? A. That was his car. It was just a flash to me, and ——

"Q. Whose car? A. Fox's car.

"Q. From what direction was it coming? A. From the East.

"Q. When you first saw this Fox car coming from the east what did you do? A. Socked the brakes down. We didn't slide the wheels either, because I wasn't going fast enough.

"Q. How fast were you going when you first saw the Fox car? A. I don't believe I was going five miles an hour.

"Q. Did your car stop when you stepped on the brake? A. Oh, yes.

"Q. Tell us, was your car moving when the collision took place? A. No.

"At the time of the impact I was in about the center of the right lane on my right side. My car wasn't quite across the center of Washington Street when the impact took place although I examined it after I moved the car afterwards and there was a little glass that might have been over the center. A little bit of glass which he throwed it forward from the car. As to the damage to my car in the collision, there wasn't a thing damaged, only the metal around the two headlights. Not even a fender. It had clipped that metal around the headlights and popped both headlights out, and that was the right front fender. It never even marked my fender, just caught the metal. There are two headlights on the right side. * * *

"At the time of the collision the Fox car was traveling West and from my observation of the car I have an opinion as to his speed. It was just a flash to me. I would say 40 miles an hour. Boy, it was just a flash to me."

On cross-examination he testified he stopped four or five feet before he got to the STOP sign.

"From where I stopped I looked and then drove on. I looked to the East and both ways. On this occasion I looked both ways. * * * From the position where I was parked I would

imagine I could see a little over a half a block would be as far as you could see in that case. * * * At the time I brought my car to a stop I was at the right side or on my right-hand side of the road about the center. From this position I looked to the right. After I looked to the right, I looked to the left and then started out slowly.

"Q. Where were you looking then? A. My driving, I suppose, and both ways too, if I could.

"Q. Where were you looking then, Mr. Maurer? A. Straight ahead, pretty much.

"Q. As I understand it then, after you left this position you did not look again to the right until you saw the flash? A. Well, I thought I was safe or I wouldn't have started out. I didn't see no car coming, I didn't see that car coming.

"Q. You saw no car coming at the time you were stopped? A. But that car at the speed it was taking it could have been quite a ways off.

"Q. And as I understand it the next time you saw that was when you were almost at the point of collision? A. Pretty close to me it was, yes. Pretty close to me. I socked my brakes right off.

"Q. After you saw this flash approaching on your left how far did your car travel before the collision?

"The Court: You mean on the right?

"Mr. Tucker: On the right, excuse me. A. Yes, from the right. I don't think it went a foot.

"Q. In other words from a location within the intersection you looked to the right and you saw a flash, and you saw the flash was going 40 miles an hour and you brought your car to a stop within one foot? A. Yes. * * *

"Before I stopped I was going about five miles an hour. I drove very slowly after that and I wasn't accelerating, or increasing my speed as I know of. I was just creeping through the intersection. Then this car that I seen, I socked right down on the brake and that was it. I never moved my car at all. The car which Fox was driving when I first saw it, was, I expect it was maybe two rods coming, about 30, 32 feet, pretty close to that at the time that I first saw it and I socked down on my

brake and boy he went past there just like a flash. I set my brake, stopped in a foot and he went by like a flash.

"Q. And you claim your car did not run into the side of Mr. Fox's car? A. Well, I wouldn't think so. How could I run into his car when I was standing——."

■■ This evidence supports a finding that Fox was negligent. He did not object to Maurer's competency to estimate speed nor is it argued here. Fox's admission he did not see the Maurer car until two feet from it makes a fact question on lookout. A closer question is involved when we consider whether Maurer was negligent as a matter of law, in which case he and Fox would be jointly liable. Was Maurer guilty of negligence as a matter of law in attempting to cross the intersection without further observation to his right after he stopped for the STOP sign? We hold he was not.

We have examined many cases in which it has been sought to hold a party guilty of negligence as a matter of law when a collision occurred while he was entering a thoroughfare from a stop street or road, including Peterson v. Union Motor Sales Co., 245 Iowa 1337, 66 N.W.2d 496; Hittle v. Jones, 217 Iowa 598, 250 N.W. 689; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12; Shutes v. Weeks, 220 Iowa 616, 262 N.W. 518; Cowles v. Joelson, 226 Iowa 1202, 286 N.W. 419; Hartman v. Red Ball Transportation Co., 211 Iowa 64, 233 N.W. 23. In Beezley v. Kleinholtz, 251 Iowa 133, 140, 100 N.W.2d 105, we discuss many other cases and reach the conclusion that "in each of the above cases wherein plaintiff's case was submitted to the jury there was evidence from which it could be found the plaintiff made some observation at a place where he could see such a distance as would make the assumption he could traverse the intersection in safety a reasonable one."

Applying this test to the facts here, we cannot say that Maurer's assumption he could cross the intersection in safety was unreasonable as a matter of law. He was entitled to assume the speed limit would be obeyed and he could reasonably assume a clear street for one-half block would give him time to clear the intersection.

■■ Fox is faced with another problem which has in-

fluenced our decision in this matter. Most of the cases cited above dealt with the question of contributory negligence. The party asking that we hold there was contributory negligence as a matter of law did not have the burden of proof. This is an action in which Fox seeks contribution or indemnity and he has the burden of proving he is entitled to the relief asked. Hawkeye-Security Ins. Co. v. Lowe Construction Co., 251 Iowa 27, 32, 99 N.W.2d 421. Only in very rare instances have we held the party with the burden of proof has proved his case as a matter of law. Batliner v. Sallee, 254 Iowa 561, 565, 118 N.W.2d 552, 554; Barnes v. Gall, 251 Iowa 921, 103 N.W.2d 710.

II. Fox argues that Maurer pleaded last clear chance which presupposes negligence and is an admission that he was negligent. Maurer denies last clear chance was pleaded and raises some procedural questions. We do not deem it advisable to discuss the questions here since last clear chance was not involved under the facts. Assuming that Maurer did so plead, it is not an admission of negligence but merely a permissible pleading in the alternative. Kuehn v. Jenkins, 251 Iowa 557, 561, 100 N.W.2d 604.

For the reasons herein stated the case is affirmed.—Affirmed.

All JUSTICES concur.