# IN THE SUPREME COURT OF IOWA

No. 35 / 06–0615

Filed May 16, 2008

**IN RE THE MARRIAGE OF TANYA LYNN
GINSBERG AND JOHN D. GINSBERG**

**Upon the Petition of
TANYA LYNN GINSBERG,**

 Appellee,

**And Concerning
JOHN D. GINSBERG,**

 Appellant.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Polk County, Donald C. Nickerson, Judge.


Appellee appeals court of appeals' decision raising claim preclusion *sua sponte.* **DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**


Alexander R. Rhoads of Babich, Goldman, Cashatt & Renzo, P.C., Des Moines, for appellant.


Jeanne K. Johnson, Des Moines, for appellee.

**PER CURIAM**.

Tanya and John Ginsberg ended their marriage in 2004. Their dissolution decree ordered John to pay the debt the parties owed to Tanya's father and hold Tanya harmless from any liability. Because the parties could not agree on how much was owed, the decree stated the amount of the debt was "disputed." John did not repay Tanya's father. Tanya eventually repaid the loan herself and brought this action seeking indemnification from John under the terms of the decree. The district court ordered John to pay Tanya $121,000. John appealed. The court of appeals held claim preclusion barred Tanya's action and remanded the case to the district court to dismiss. On further review, we hold claim preclusion does not bar an action to enforce the decree. We vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Facts and Prior Proceedings.

Tanya and John Ginsberg were divorced on March 22, 2004. The district court entered a decree based upon the parties' stipulation. *See* Iowa Code § 598.8(2)(*a*) (2003). The decree contained a provision regarding debt the parties owed to Tanya's father, Ron Daniels: "[John] shall pay the debt, the amount of which is disputed, to Ron Daniels and hold [Tanya] harmless therefrom."

Daniels provided the parties substantial financial assistance during the marriage. In September 1991, Daniels loaned the parties $124,561.28 for the purchase of a home in Elkhart, Iowa. The loan was to be repaid within ninety days through a mortgage on the property. The parties chose instead to make periodic payments to Daniels. Between 1991 and 1998, the parties paid him $34,893.71. During May 1999, Daniels loaned the parties $180,000 for a down payment on a home in

Des Moines. The parties repaid Daniels $180,000 five months later when they sold their Elkhart home. Additionally, the parties borrowed $70,000 from Daniels in August 2001. The parties made payments to Daniels totaling $38,398 between October 2001 and May 2003. The payments stopped after Tanya filed for divorce. In summary, Daniels loaned the parties a total of $374,561.28 and received $253,291.71 in payments for a balance of $121,269.57.

After the divorce was finalized, Daniels repeatedly asked Tanya when John was going to pay him. Tanya testified she grew tired of her father's questioning and paid Daniels $121,000. Thereafter, she filed a "Motion to Enforce the Decree, or in the Alternative, Application for Declaratory Judgment" in order to recover from John the amount she paid.

The district court held a hearing and found the amount of the disputed debt to Daniels was $121,269.57. The court ordered John to pay Tanya $121,000 because she "is the real party in interest in as much as she paid her father." The court also ordered John to pay Daniels $269.57. The court denied Tanya's request for interest because Daniels testified it was not his custom to charge family members interest. The court also denied Tanya's request for fees.

John appealed, arguing there was insufficient evidence to support the ruling. The court of appeals *sua sponte* raised the issue of claim preclusion in its ruling. It stated:

> Either party could have insisted the district court decide the debt issue prior to the entry of the decree; but instead, they chose to go forward and allowed the issue to remain "disputed" as part of the court's final order. As Tanya and John willingly relinquished their right to litigate a disputed issue, we conclude that subsequent litigation on the identical issue is barred.

The court of appeals also denied Tanya's request for attorney fees on appeal.

Thereafter, Tanya applied for further review, which we granted. She argues the court of appeals erred by raising an issue not presented to or addressed by the district court. *See DeVoss v. State,* 648 N.W.2d 56, 63 (Iowa 2002) (holding "we will not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the *only* ground available to uphold a district court ruling"). For the reasons that follow, we vacate the decision of the court of appeals and affirm the district court.

## II.     Scope of Review.

We review cases tried in equity de novo. Iowa R. App. P. 6.4. However, we review the construction of a dissolution decree as a matter of law. *In re Marriage of Goodman,* 690 N.W.2d 279, 282 (Iowa 2004) (citing *Sorensen v. Nelson,* 342 N.W.2d 477, 479 (Iowa 1984)).

## III.     Merits.

**A.     Claim Preclusion.** "[C]laim preclusion is a bar to further litigation of a claim following a final adjudication or judgment on the merits." *Penn v. Iowa State Bd. of Regents,* 577 N.W.2d 393, 398 (Iowa 1998). "[A] party must litigate all matters growing out of the claim, and claim preclusion will apply 'not only to matters actually determined in an earlier action but to all relevant matters that could have been determined.'" *Id.* (quoting *Shumaker v. Iowa Dep't of Transp.,* 541 N.W.2d 850, 852 (Iowa 1995)).

We need not decide whether a court may raise claim preclusion *sua sponte* because we find the doctrine inapplicable in this case. The court of appeals held that by leaving the amount owed to Daniels "disputed," the parties "relinquish[ed] the right to litigate any and all

issues they had" regarding the debt. We disagree. Claim preclusion does not prevent the *enforcement* of the decree as it was written. Here, Tanya was not attempting to relitigate who should repay her father for the money he loaned the couple during their marriage. That issue had been decided. Tanya was merely asking the district court to enforce the "hold harmless" provision of the decree. Such an action is always permissible. *See In re Marriage of Butterfield*, 500 N.W.2d 95, 98 (Iowa Ct. App. 1993) (holding a stipulation of settlement in dissolution proceeding is a contract between the parties that becomes final and binding when it is accepted and approved by the court). Moreover, even if the decree had stated the amount the parties owed, Daniels would not be estopped from proving the loan was for a different amount because he was not a party to the decree. In a sense, Tanya stepped into Daniels' shoes when she paid the debt and then turned to John for reimbursement.

**B. Indemnification.** According to the decree, John agreed to hold Tanya "harmless from any liability" stemming from the debt owed to Daniels. "Hold harmless" is synonymous with "indemnify." *Black's Law Dictionary* 749 (8th ed. 2004). "In an indemnification contract, one party promises to reimburse or hold harmless another party for loss, damage, or liability." *Maxim Techs., Inc. v. City of Dubuque*, 690 N.W.2d 896, 900 (Iowa 2005).

Since Tanya is seeking indemnification, she has the burden of proving she is entitled to the relief requested. *Mineke v. Fox*, 256 Iowa 256, 263, 126 N.W.2d 918, 921 (1964). The measure of relief "is the actual amount the person, who is secondarily liable, has been compelled to pay as a natural consequence of the [indemnitor]'s negligence or other wrong." *Howell v. River Prods. Co.*, 379 N.W.2d 919, 921 (Iowa 1986) (quoting 42 C.J.S. *Indemnity* § 24, at 602 (1944)). Tanya paid Daniels

$121,000 to satisfy the amount owed to him. Certainly her payment is evidence of the amount owed. But because these loans were between family members, the amount paid is not nearly as compelling as the amount paid in an arms-length transaction. Nevertheless, we find Tanya proved the amount owed was $121,269.57 and she was entitled to $121,000 (the amount she paid).

Daniels and his office manager, who handled both his business and personal finances, testified regarding the amounts loaned and the amounts repaid. John did not dispute the dollar amounts provided. He claims the parties only owed Daniels the balance due for the $70,000 loan ($31,602) because the $124,561.28 for the Elkhart house in 1991 was really a gift. John did not explain what basis he had for believing the money was a gift other than he claimed the parties never made payments on that particular loan. Tanya offered evidence the parties paid Daniels $34,893.71 between 1991 and 1998. John testified this money was payment for a Lexus vehicle he bought from Daniels. The only evidence he offered in support of this claim was a check for $11,000 John made to Daniels. John wrote in the memo line "1st Lexus pymt." However, the check was dated June 13, 2000, and the amount was not included in any of Tanya's calculations. Thus, John did not disprove $34,893.71 was paid toward the $124,561.28 loan. Moreover, he offered no evidence to suggest the balance of the loan was transformed into a gift. Daniels testified the money was unequivocally a loan. The district court implicitly found Daniels and Tanya more credible than John. We find them more credible too.

## IV.    Conclusion.

The court of appeals erred by applying claim preclusion to Tanya's indemnification action. Tanya proved she was entitled to $121,000 from

John.  The district court properly ordered John to pay Daniels $269.57. Tanya's request for appellate attorney fees is denied.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**