JOHN DODEN, appellee, v. CHARLES N. HOUSH, d/b/a FOREST
CITY AUCTION COMPANY et al., appellants.

RAYMOND BARNES, appellee, v. HOUSH et al., appellants.

HARM FREESEMANN, appellee, v. HOUSH et al., appellants.

No. 49982.

(Reported in 105 N.W.2d 78)

1272

SEPTEMBER 20, 1960.

Boyle & Schuler, of Clear Lake, and B. C. Berge, of Garner, for appellants.

Finley & Teas, of Mason City, for appellees.

THORNTON, J.—Each plaintiff brought an action against the defendants to recover damages for breach of warranty of fitness of feeder pigs purchased by plaintiffs from defendants at public auction. Defendant Charles N. Housh is the owner and operator of a livestock sales barn known as the Forest City

Auction Company, Forest City, Iowa. Defendant E. R. Doane sold the feeder pigs through the sales barn at public auction. The pigs had been purchased by him in Oklahoma and trucked to the barn for the auctions.

Plaintiff John Doden, a farmer engaged in general and livestock farming, purchased 102 feeder pigs at the auction held December 12, 1956. The pigs showed signs of illness on the 15th. Doden called a veterinarian, treatment was administered. Ninety-two of the pigs died within a month.

Plaintiff Raymond Barnes, a livestock and grain farmer, purchased 31 pigs at the auction January 2, 1957. The pigs started getting sick within a day or two. He called a veterinarian January 17. By February 19, 1957, 29 of the pigs died.

Plaintiff Harm Freesemann, a farmer, purchased 30 feeder pigs at the auction January 2, 1957. The pigs started getting sick the eighth or ninth day. At that time a veterinarian was called. Within a month all of the pigs had died.

The cases were consolidated for trial and are so presented here. The petitions of each plaintiff are identical except for dates of purchases, number of pigs and amounts claimed. Each contained a division on the theory of express warranty and implied warranty. The cases were submitted to the jury on the theory of implied warranty only. A verdict was returned for each plaintiff and judgments entered accordingly.

Defendants appeal, urging three major propositions for reversal.

I. The first proposition urged by defendants is the rule of caveat emptor applies to the sales before us and an implied warranty of fitness does not arise. Our rule has been recently very clearly stated in Ver Steegh v. Flaugh, 251 Iowa 1011, 103 N.W.2d 718. At the time this case was argued able counsel for defendants of course did not have the benefit of the Ver Steegh opinion.

Starting on page 1023 of 251 Iowa, page 725 of 103 N.W.2d the Ver Steegh opinion holds (in the case of a sale of a boar for breeding purposes):

"The applicable law is found in the Uniform Sales Act, chapter 554, Codes 1954, 1958, enacted by the Thirty-eighth General Assembly in 1919. Section 554.16 provides:

"1. Where the buyer * * * makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment * * * there is an implied warranty that the goods shall be reasonably fit for such purpose. * * *.

"Section 554.77 says, ' "Goods" ' includes all chattels personal other than things in action and money."

At page 1025 of 251 Iowa, page 727 of 103 N.W.2d, we state in the Ver Steegh opinion, "It is clear there may be an implied warranty of reasonable fitness of an animal notwithstanding the seller's lack of knowledge that it does not comply with the warranty and notwithstanding the difficulty of discovering this fact."

The Sales Act makes no distinction between sales at public auction and other sales with respect to warranty of fitness. The Act also provides the answer for defendants' contention implied warranty does not apply to an executed contract of sale. Section 554.16 provides: "* * * of goods supplied under a contract to sell or a sale." "A sale" is an executed contract of sale.

Feeder pigs, those sold to be fed to marketable weight, are included in the provision of section 554.16, "* * * any particular purpose * * *," as well as animals sold for breeding, dairying or work purposes. Tuttle v. Bootes Hatcheries & Packing Co., D. C. Minn., 1953, 112 F. Supp. 705, 709 (turkey poults purchased from a hatchery to be raised for market); Stanton v. Shakofsky, 2 Ill. App.2d 527, 119 N.E.2d 812; Ver Steegh v. Flaugh, supra; and annotation, 53 A. L. R.2d 892.

As pointed out in Ver Steegh v. Flaugh, supra, the older decisions before the adoption of the Uniform Sales Act applying the rule of caveat emptor are not applicable to cases like these governed by the Act.

II. Defendants contend plaintiffs have failed to plead and prove a case of implied warranty under section 554.16(1). We will first consider their question on pleading. They say plaintiffs have failed to comply with rules 93 and 94, Rules of Civil Procedure. Rule 93 provides:

"A claim in derogation of general law, or founded on any kind of exception, shall be so pleaded as to set forth such claim or exception."

In pertinent part section 554.16 is as follows: "Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty * * * except as follows: * * *." There then follow six separate paragraphs setting out the circumstances under which there may be an implied warranty and limitations thereon. As pointed out by the able trial court this is not a statement of a true exception. It is a statement of the application of implied warranties and as such is a statement of general law. The provision could have been written in reverse with identical effect. If this is an exception, which we do not hold, the petitions clearly set forth a claim of breach of an implied warranty.

If we understand defendants' claim relative to rule 94, it is plaintiffs have failed to designate the statute by the section number. Rule 94 provides:

"Matters of which judicial notice is taken need not be stated in any pleading. But a pleading asserting any statute, or a right derived therefrom, shall refer to such statute by plain designation. The court shall judicially notice the statutes of any state, territory or other jurisdiction of the United States so referred to."

Here again the trial court has provided the answer. In its ruling it states such question should be raised by motion directed to the pleadings and not for the first time at the close of plaintiffs' evidence in a motion for directed verdict. An examination of plaintiffs' petitions discloses an action for breach of an implied warranty. We are certain able counsel for defendants were in no way misled. That the designation of the statute may take place at the pretrial conference, see Advisory Committee Comment, Volume 1, Cook's Iowa Rules of Civil Procedure, page 620.

III. In passing on the sufficiency of the evidence to submit the cases to the jury we view the evidence in the light most favorable to plaintiffs. They are entitled to all reasonable inferences to be drawn therefrom. There must be substantial evidence in support of their theory of the case. There is more than ample evidence to sustain plaintiffs' causes of action in relation to the breach of the warranty and defend-

ants knew by implication the purpose for which the feeder pigs were purchased.

Each plaintiff testified his pigs became sick within three to nine days after the sales and died within a month to six weeks. In addition there is testimony of a practicing veterinarian in each case giving his opinion as an expert based on observation and treatment the pigs were infected on the day of sale with the disease causing death. Ver Steegh v. Flaugh, 251 Iowa 1011, 1023, 103 N.W.2d 718, 725; and Passcuzzi v. Pierce, 208 Iowa 1389, 227 N.W. 409.

Defendants both testified the purpose of purchasing feeder pigs is to feed them for market. The act of bidding on feeder pigs indicates the purpose. Defendants do not seriously contend otherwise. 77 C. J. S., Sales, section 325b, page 1180.

IV. Defendants vigorously urge there is not substantial evidence plaintiffs relied upon the skill and judgment of defendants in purchasing the pigs. The evidence shows defendant Housh, operator and owner of the sales barn, is the agent and factor for an undisclosed principal, defendant Doane, seller of the pigs. There is no evidence to the contrary. Therefore the evidence must show reliance on the skill and judgment of Housh.

In Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 84, 56 N.W.2d 18, 22, we said:

"It is not necessary that the buyer testify in so many words he relied on the seller's skill or judgment. Reliance may be shown by the circumstances of the case. The buyer's reliance on the seller need not be a total reliance. The buyer may rely on his own judgment as to some matters and on the seller's skill and judgment as to others." (Citing cases)

One of the important features of reliance is brought out in the testimony of defendant Housh. On redirect examination, in explaining his statement on cross-examination that they were sold as healthy pigs, he said:

"No, we never make that statement to the audience, the pigs are inspected by the veterinarian, the audience expects them to be in good health, of course. We don't mention health in the ring because it is taken for granted their health is good, they are saleable, yes. Yes, everybody takes that for granted if they come to the auction ring."

It would seem to be a fair statement that all farmers patronizing sale barns would rely on the operator to see to it nothing but healthy animals were brought into the sale ring.

Housh had operated the sale barn for seven years. He advertised on radio, TV and in local newspapers. ·He said, "* * * We state that we are reliable and a good place to do business. That is the general tenor of our ads." Each of the plaintiffs was aware of these ads and the reputation of the barn as a good one. Two of them had attended other sales there and purchased livestock with good results. At the December 12th sale Mr. Housh represented the pigs as "good doing Oklahoma pigs." At the January 2nd sale he advised the audience ·some feeders had had a little trouble with southern feeder pigs but that they now had that under control, to start the pigs easy on oats. The statement, "Start these pigs out easy, mostly oats", was written on the vaccination certificates given to the plaintiffs on January 2nd. Each of the plaintiffs testified they relied on Mr. Housh. And the plaintiffs who received instructions on feeding followed those instructions. The foregoing demonstrates there is substantial evidence from which the jury could find plaintiffs relied upon Mr. Housh's skill and judgment in offering for sale healthy pigs.

V. Defendants contend the trial court was in error in submitting the reasonable value of extra services incident to the care of the sick pigs and the cost of telephone calls necessary to obtain the services of a veterinarian because such items of damage were not supported in the evidence. An examination of the evidence discloses ample support in the evidence for extra services in each case. Each of the plaintiffs testified to the approximate number of hours of extra labor performed in caring for the sick pigs and to the reasonable value of farm labor in their respective communities. The following statement from the case of Jaeger v. Hackert, 241 Iowa 379, 390, 41 N.W.2d 42, 49, is here applicable:

"Where it has been proved that damage has resulted and the only uncertainty is as to the exact amount, it is sufficient if the record shows 'data from which the extent of the injury * * * can be ascertained with reasonable certainty * * *. Data

for an exact calculation is not necessary.' Osterling v. Frick, 284 Pa. 397, 404, 131 A. 250, 252; 25 C. J. S., Damages, section 28."

It was the duty of plaintiffs in each instance to minimize damages ·and to save each pig possible. Where extra work is necessary to do so, as shown here, the fact they testified "about" so many hours of extra work were performed rather than to the exact number from a memorandum will not defeat recovery. This is likewise true in the case of the necessary telephone calls for plaintiff Doden. He testified to the cost of the calls as follows: "Maybe $5.00 at the most."

In the Barnes and Freesemann cases there was no evidence of the cost or value of telephone calls. However, in the instructions in each case the telephone calls were coupled with extra services and the amount of recovery limited to amounts testified to for extra services. The presumption is the jury followed the instructions and did not allow damages for items on which there was no evidence. We do not find reversible error here. The case was properly submitted to the jury and is affirmed.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.