ALFRED GOLTZ, appellee, v. HUMBOLDT LIVESTOCK AUCTION, INC., appellant.

No. 50944.

(Reported in 125 N.W.2d 773)

JANUARY 14, 1964.

REHEARING DENIED FEBRUARY 11, 1964.

Harlyn A. Stoebe, of Humboldt, for appellant.

Frundt & Hibbs, of Blue Earth, Minnesota, and Franklin Jaqua, of Humboldt, for appellee.

PETERSON, J.—This law action is a claim by plaintiff, as buyer of livestock, that livestock purchased at defendant's auction barn were diseased at the time of purchase and therefore the implied warranty of fitness provided in Uniform Sales Act (Iowa Code chapter 554) was breached. As a result thereof 24 of the 128 calves purchased by plaintiff died. Three holstein calves owned by plaintiff also died.

Defendant's special appearance as to an alleged defect in procedure was overruled. Defendant's answer, in addition to denials, set up the following affirmative defenses: 1. That warranties had been disclaimed by defendant by reason of written notice attached to the sale bill. 2. That defendant was only an agent and not the owner of the livestock. Plaintiff's reply denied defendant's affirmative defenses. The court struck from defendant's answer, and refused to submit to the jury, the affirmative defenses on the ground they constituted no defense. The jury returned a verdict for plaintiff. Defendant appealed.

I. Plaintiff is a cattle feeder living near Elmore, Minnesota. Friday, September 30, 1960, he purchased 128 head of heifers at defendant's place of business. He received at defendant's office a bill for the heifers upon which was printed: "Not responsible for sickness, accidents or death." When he paid for the cattle he also received a certificate of health from defendant's veterinarian. He testified the cattle looked healthy when he bought them, but when he unloaded them at his farm they looked slow. He put some flu medicine in the tank when he watered them. He thought they had shipping fever. Sunday afternoon, two days after he bought them, he went to see a veterinarian, Dr. Donald L. Fritz, and obtained some more flu medicine. He called Doctor Fritz about the middle of the week, but the doctor did not come to his farm until Saturday. The doctor treated them with more flu medicine. Doctor Fritz came again on October 10 and took blood samples. He came back on the 13th, when the cattle seemed to be getting worse. Plaintiff then called Dr. Leo P. Miller, another veterinarian. Doctor Miller came out on October 13 or 14 and vaccinated the cattle against rhinotracheitis, commonly known as "rednose." By then they had diarrhea and were wheezing badly and had a temperature over 105. They also failed to eat properly and had a bad cough. Plaintiff had about 135 head of other cattle in his yards, which he had purchased in Nebraska. They did not get very sick, but lost their appetites for about three weeks.

At the sale prospective buyers are seated on three sides of a moon shaped ring. It is an amphitheater, with seats in tiers, one above the other. Plaintiff sat in different places throughout the time he was buying cattle. He made no observations as to the condition of the cattle when he loaded them into the trucks. He testified he bought the cattle solely on his own ability and the auctioneer did not say whether they were good or bad. He said he decided from observing the cattle which ones he wanted to buy, although he accepted defendant's health certificate.

Doctor Miller testified the incubation period for rednose is between five and seven days and that the ordinary mortality rate is from three to five percent.

Donald Lee testified he drove a load of cattle from defend-

ant's sales barn to plaintiff's farm near Elmore, Minnesota, and that they did not appear sick, sluggish nor slow. Defendant proffered the testimony of six farmers to the effect they had purchased calves from the same herd from which plaintiff's calves were purchased and had taken them to their farms and none of them ever became sick. The court refused admission of this evidence.

II. Defendant alleges the trial court erred in over-ruling its special appearance, which objected to the jurisdiction of the court because of an error in the original notice. The notice in its caption stated: "In the District Court of the State of Iowa, in and for ............... County." However, later in the notice plaintiff stated: "You are * * * to appear * * * at Dakota City in Humboldt County, Iowa, etc. * * *." This specific provision cured the omission of the name of the county in the caption. Defendant was not misled. We have considered errors of this type in at least two recent cases. Krueger v. Lynch, 242 Iowa 772, 48 N.W.2d 266; Jacobson v. Leap, 249 Iowa 1036, 88 N.W.2d 919. In the Krueger case the notice said 20 days instead of 30. We held defendant knew the statutory provision as to time of appearance and was not misled. In the Jacobson case, filed in Washington County, the notice said the petition was on file in "Webster County". Since the notice also said defendant must appear at the courthouse in Washington County, the defect was not fatal. These cases are analogous to the case at bar, and the trial court did not commit error in over-ruling the special appearance.

III. Appellant contends in its assignment of errors the trial court should be directed to enter judgment for defendant notwithstanding the verdict because of disclaimer of warranty in the sales bill, Exhibit A.

Exhibit A was primarily the statement of account for the cost of the 128 head of calves purchased by plaintiff. In printed letters shown on the account appear the words shown in Division I. Plaintiff contends he did not see these words when he accepted the statement of account and gave his check for the cost of the calves. Two sections under chapter 554, known as the Sales Law, pertain to this situation. Section 554.22 provides

in paragraph 2 thereof as follows: "A sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner. Until such announcement is made any bidder may retract his bid, and the auctioneer may withdraw the goods from the sale unless the auction has been announced to be without reserve."

Plaintiff contends he had bid in the calves and the hammer had fallen on the sales made to him before he went to the office to receive his statement of account and deliver his check. In other words, appellee claims the sale was complete before there was any opportunity on his part to see the disclaimer of warranty printed upon the sales bill.

The other section of the Sales Law which pertains to this situation is section 554.72: "Where any right, duty, or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

The sale bill in itself would not amount to an express agreement between the parties. There is insufficient evidence to show it would be a part of a course of dealing between the parties or of a custom which would bind both parties to the sale.

On the narrow basis of the sale bill we are not justified in holding an implied warranty was negatived as a matter of law by reason of section 554.72. This is the sole ground for the motion for directed verdict; asserting disclaimer of an implied warranty. On this evidence alone we cannot decide defendant would be entitled to a directed verdict or judgment notwithstanding verdict. Other evidence was erroneously excluded by the ruling of the court, but the errors were not raised in motion for directed verdict at close of all evidence. John Rooff & Sons v. Winterbottom, 249 Iowa 122, 127, 86 N.W.2d 131, 135; Frederick v. Goff, 251 Iowa 290, 296, 100 N.W.2d 624, 628; Markman v. Hoefer, 252 Iowa 118, 122, 106 N.W.2d 59, 62; Bartels v. Cair-Dem, Inc., 255 Iowa 834, 845, 124 N.W.2d 514, 521.

IV. The trial court did commit error in the following

respects, although they cannot be considered as a ground for judgment notwithstanding verdict. 1. In failing to admit Exhibits 3 to 11 inclusive in evidence. 2. In failing to admit the oral statement made to all bidders at the sale by defendant's president as to disclaimer of warranty. 3. In failing to admit the evidence of six farmers concerning their purchase of calves similar to those purchased. 4. In striking Divisions II, III and IV from defendant's answer and amendment to Division II of the answer.

■ V. Defendant offered Exhibits 3 to 11 inclusive in evidence. These exhibits were photographs of a statement posted on the walls of the sales barn in eight or nine prominent places announcing in clear printed letters the following statement: "All guarantees between buyer and seller; all livestock at owner's risk. We act as *commission agents only.*" The court refused to receive such exhibits. This was error. They should have been received and submitted to the jury for its consideration, in connection with defendant's claim of disclaimer of warranty.

■ VI. Mr. Byron Hayes, president of defendant-corporation, testified he was present at the sale held September 30, 1960. He made the following announcement as the sale started and made it several times during the course of the sale: "When you boys buy cattle in Humboldt you are not expected to take anything you don't like. Look your cattle over carefully, and after you bid them in and before you remove them from the chutes look them over again by yourself or have a veterinary look them over or any other person in which you have confidence, because after they leave our yards they are yours; if you have any trouble with them or they get sick, we don't want to hear from you again and we are not responsible." The trial court refused to admit such evidence of Mr. Hayes. This was error. It was duly proffered before defendant rested.

■ VII. Defendant also proffered the evidence of witnesses Pisel, Christensen, Kunert, Sandell, Ellsworth and Bennett to the effect that if each of them had been permitted to answer the question they would have testified substantially as follows: "That when they were present at the sale barn as prospective buyers they heard Byron Hayes several times make

the announcement above stated." They also testified they purchased calves from the same herd from which plaintiff purchased, and none became sick. The testimony of these farmers should have been admitted.

■ VIII. Division II of defendant's answer was the allegation by defendant that the cattle were accepted by plaintiff on the basis of notice attached to the sale bill on which notice it was printed "Not responsible for sickness, accidents or death."

Division III is an allegation by defendant that it was the agent of the owners of the cattle sold and, therefore, not the seller of the cattle and, therefore, defendant was not liable for any alleged warranties on said cattle.

Division IV of defendant's answer alleged that defendant was the consignee of the owners of the cattle and not liable on any alleged warranties on said cattle.

Defendant amended Division II of its answer alleging that both before the auction started and during the course of the auction announcement was made that the sale was at the buyer's risk; that after the buyer removed the livestock from the premises they were at their own risk, and they were alone responsible for them and anything that might happen to them.

These divisions should not have been stricken. Defendant had a right to plead the matters alleged, and to prove them, if it could.

■ IX. Appellant contends it was entitled to a directed verdict because plaintiff failed to prove he relied on the seller's skill or judgment as required by Code section 554.16(1). Plaintiff testified in purchasing the cattle he depended on his own judgment, but he said he also depended on the health certificate defendant issued. We cannot hold, under the complete record, there was a failure to prove plaintiff relied on the seller's skill or judgment.

We have said in cases of this type such as Drager v. Carlson Hybrid Corn Co., 244 Iowa 78, 84, 56 N.W.2d 18: "It is not necessary that the buyer testify in so many words he relied on the seller's skill or judgment. Reliance may be shown by the circumstances of the case. The buyer's reliance on the seller

need not be a total reliance. The buyer may rely on his own judgment as to some matters and on the seller's skill and judgment as to others." We repeated and affirmed this quotation in Doden v. Housh, 251 Iowa 1271, 1276, 105 N.W.2d 78.

X. Appellant alleges plaintiff failed to sustain the burden of proving it was the seller of the cattle. This contention was included in the motion for directed verdict. Appellant contends it was only the agent for the seller and any claim plaintiff had was against the owner of the cattle and not against defendant.

Under the provisions of chapter 554, the Sales Law, we cannot sustain this contention. Defendant sold the cattle to plaintiff and rendered a bill to him and the cost of the cattle, $13,320.91, was paid by plaintiff to defendant. Defendant cannot, under such contention, relieve itself of the warranties under the Sales Law. 7 C. J. S., Auctions and Auctioneers, section 6; 5 Am. Jur., Auctions, section 58; 35 I. C. A., page 204. See general statement in 5 Am. Jur., supra: "It is a general rule that an auctioneer who sells property without disclosing the name of the principal will be considered as the vendor himself and, as such, is responsible to the buyer."

See also the recent auction barn case decided by this court: Doden v. Housh, supra.

We cannot say whether upon another trial a disclaimer or waiver of implied warranty will be established as a matter of law. As stated, such a contention upon the first trial was based solely on the statement in the sale bill, previously quoted.

The case is reversed because of the errors outlined, and remanded for a new trial.—Reversed.

All JUSTICES concur.