**W & W LIVESTOCK ENTERPRISES, INC.,**
**Appellant,**

v.

**Gerald H. DENNLER, Appellee.**

**No. 54007.**

Supreme Court of Iowa.

Sept. 2, 1970.

Mershon, Snow & Knock, Cedar Falls, and Stewart, Wimer, Brennan, Joyce & Huff, Des Moines, for appellant.

Richard D. Hermann, Ankeny, for appellee.

LARSON, Justice.

Plaintiff-appellant sought recovery of a sum represented by two checks in the amounts of $8,050.00 and $1,334.00, which checks were given by defendant-appellee in payment for 408 feeder pigs delivered to him pursuant to an oral contract between the parties. The defendant's answer and counterclaim alleged a breach of express oral and implied warranties, for which he asked damages of $15,822.91. Pursuant to trial and after submission of the evidence the court directed a verdict on plaintiff's claim as prayed and submitted defendant's counterclaim to the jury. The jury returned a verdict on the counterclaim in the amount of $8,410.00. Plaintiff's motion for a judgment notwithstanding the verdict and motion for a new trial were overruled by the court and judgments were entered accordingly. This appeal, by plaintiff only, followed. The principal errors assigned challenge the sufficiency of the evidence in at least two respects.

The following involved propositions are deemed so well established that authorities need not be cited to support them. The jury's findings of fact are binding upon us if supported by substantial evidence. In considering plaintiff's motions above referred to, we give the defendant's evidence the most favorable construction it will reasonably bear. Even when facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f) (1), (2) and (17), Rules of Civil Procedure. Reed v. Bunger, 255 Iowa 322, 122 N.W.2d 290, considers like questions arising under our sales law, chapter 554, and much of the discussion therein need not be repeated here.

From the record we learn that on or about October 1, 1967, defendant Gerald H. Dennler, an experienced stock feeder, called the plaintiff, W & W Livestock Enterprises, Inc., and informed its agent, Mr. Williams, he was looking for three to four hundred head of feeder pigs but was not in a hurry, that he wanted good clean pigs and would give him a week or two to pick them up. On October 3, 1967, Williams called and said he had 350 "real good pigs" of 80 pounds or more and would send them down by truck the next day. On October 4th the 350 feeder pigs, weighing about 76 pounds each, were delivered to defendant's farm at the agreed price of $23.00 per head. Three days later a second bunch of pigs was delivered, making the total of 408 head. A written bill of sale and conditional guarantee was delivered by the plaintiff with each consignment and signed by Dennler, who after a visual inspection of the pigs issued two checks in full payment therefor, the

first in the amount of $8,050.00 and the second for $1,334.00.

A couple of days after delivery of the pigs Dennler testified he noticed blood throughout the pig manure and immediately called in his veterinarian, Dr. Sievers, who diagnosed the ailment affecting these pigs as vibrionic dysentery and prescribed medication. Acting on the advice of his attorney, Dennler then stopped payment on both checks given plaintiff and informed it of the pigs' condition. Two pigs were promptly posted at the Veterinary Diagnostic Laboratory in Ames, Iowa, by Dr. John R. Andersen, who after his post-mortem found two ailments present, pneumonia and necrotic enteritus, also known as "bloody scours." Dr. Sievers treated the affected herd until November 7, 1967, and then left some medicine for defendant to continue treatments, which he said he did until the water tank froze in December and he was no longer able to continue. Several qualified veterinarians testified as to the nature of this ailment, its period of germination in pigs contracting the disease, and as to its proper care and treatment. As a result of their alleged diseased condition when delivered, defendant testified he lost 191 out of 408 pigs from October 4, 1967, until they were marketed in February and March of 1968.

In submitting defendant's counterclaim to the jury the court told it that under defendant's paragraph 16, as amended, the proper matters to be considered in determining the damages, if any, were: (a) a sum equal to the difference between the value of the pigs at the time of delivery and the value said pigs would have had if they had been as warranted, in an amount shown by the evidence, but not exceeding $4,370.-00; (b) a sum representing the fair and reasonable value of veterinary services and medicines reasonably required in the treatment of the pigs, but not exceeding $444.50; (c) a sum representing the fair and reasonable cost of medication required to be added to the feed of the pigs, but not exceeding $360.00; (d) a sum representing

the fair and reasonable value of four "fat hogs" lost allegedly after the disease was communicated to them, but not exceeding $151.76; (e) the fair and reasonable value of feed fed to pigs that died and excess feed fed to pigs that lived, but not exceeding $3,255.00. These sums were the amounts defendant claimed in his amended petition. Such items of damage we have recognized and approved in several recent cases decided under the applicable chapter 554 of the Code known as the Uniform Commercial Code. Reed v. Bunger, supra; Doden v. Housh, 251 Iowa 1271, 105 N.W. 2d 78; Turner v. Kunde, 256 Iowa 835, 128 N.W.2d 196; Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 56 N.W.2d 18; Dailey v. Holiday Distributing Corp., 260 Iowa 859, 151 N.W.2d 477.

Appellant does not contend that these are not proper items of loss in cases of this nature, but contends they were not properly before the court because there was insufficient evidence to submit them to the jury. Appellant does not contend it raised any objections as to the competency of the testimony at the time offered, only that under the pleadings it was insufficient to sustain the issues raised by the pleadings. We do not agree.

Appellant's three propositions relied upon for reversal may be summarized as follows: (1) that the trial court should not have submitted item 16b of defendant's counterclaim for the reason that there was no evidence in the record to support the claim; (2) that there was no evidence in the record as to the difference in value of the pigs at the time of delivery and their value had they been as warranted to raise a jury issue; (3) that the trial court erred in submitting the cost of the pigs as the difference in value as warranted and their actual value. The last two we consider together.

I. Appellant argues that paragraph 16b of defendant's original counterclaim claiming loss of expected profits was not a proper measure of damage, that his amendment to 16b stating a proper measure was im-

properly permitted, and that the measure of damages submitted as feed loss was erroneous and not supported by the evidence. It further argues that the court improperly permitted defendant to plead and prove loss of value of the pigs based upon the purchase price of the animals.

Originally, in paragraph 16b of his counterclaim defendant sought damages in the sum of $4,896.00 for expected profits from the pigs purchased, but at the close of his evidence he asked and was granted leave to amend sub-paragraph b to request recovery for the fair and reasonable cost of excess feed consumed by the pigs that were marketed and also the cost of feed fed to pigs that died, not to exceed $3,255.00. Appellant complains of this grant, even though the trial court pointed out other allegations in the pleadings and considerable evidence in the record which tended to support the allegations in the amendment. We find no error in the consideration of item 16b of defendant's counterclaim as amended.

■ The trial court has broad discretion in permitting or denying amendments to conform to the proof at the close of all evidence and, unless this discretion is abused, we will not interfere. To allow such amendments is the rule, not the exception. Dailey v. Holiday Distributing Corp., supra, 260 Iowa 859, 865, 151 N.W. 2d 477, 482; Claeys v. Moldenschardt, 260 Iowa 36, 41, 148 N.W.2d 479, 483; Durant Elevator Co. v. S. J. Hoffman & Sons, 259 Iowa 500, 503, 145 N.W.2d 25, 26, 27; Rule 88, R.C.P.

■■ True, an amendment to conform to the proof under Rule 88 can be permitted only if it does not substantially change the claim or defense. In granting the amendment here the trial court noted that defendant's original counterclaim had alleged that, because of the diseased condition of the pigs, the defendant had not been able to sell them in January of 1968 as he had planned and as was usual in bringing such feeder pigs to marketable weights, but was forced to hold them until February and March to get them to that weight. In addition, the court noted in defendant's reply to plaintiff's answer he had alleged that, because of the diseased condition of the pigs, he had had to expend more money for feed than ordinarily would have been necessary for feeder pigs of the size purchased from plaintiff. We are satisfied that this amendment in no way prejudiced plaintiff and did not change the claim or defense asserted by the litigants. There was no error in permitting defendant's amendment of paragraph 16b to conform to the proof.

■ II. We have consistently held that special items, such as feed fed to livestock that die and excess feed fed to diseased livestock that is therefore marketed late, is proper. Turner v. Kunde, supra, 256 Iowa 835, 842, 128 N.W.2d 196, 200; Breitenkamp v. Community Cooperative Association, 253 Iowa 839, 844, 845, 114 N.W.2d 323, 326; Jaeger v. Hackert, 241 Iowa 379, 391, 41 N.W.2d 42, 49. Also see section 554.2715, Code of 1966.

In Turner v. Kunde, supra, we considered the elements of damage recoverable in such circumstances and had this to say: "The proper rule is set forth in section 554.70 (7): 'In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.' * * * But we think the statute should be followed here. There are of course some special items which might properly be submitted here, if supported by competent evidence. In this category are veterinary services, and cost of feed and labor if it appears these were wasted because the cattle, through failure to meet the warranty of quality, were incapable of developing normally; that is to say, if they were expenses attributable to the breach of warranty."

■■ Certainly there must be adequate allegations and proof of these special items,

but we are satisfied here the plaintiff did meet these requirements. The showing required, we have said, is sufficient if the record shows data from which the extent of the injury can be ascertained with reasonable certainty. Data for an exact calculation is not necessary. Jaeger v. Hackert, supra, at page 390 of 241 Iowa, 41 N.W.2d 42, and citations. Therefore, if there was good and competent evidence to support defendant's amended claim of special damages by way of excess feed costs, the court committed no error in allowing this amendment. We believe there was such evidence.

Again referring to the record, it appears defendant testified that normally it required $15.00 worth of feed per pig of that size (76 pounds) to get it up to a marketable weight. He also testified it had taken "somewhat over $6,700.00" to feed all of these pigs and to bring the surviving 217 pigs to a marketable weight at the time they were sold. Although he fed, treated, and cared for all of them in a like manner at the same facilities, the remaining 191 pigs died. The veterinarians who testified found no fault with this care and treatment.

We conclude the evidence was sufficient to establish an expenditure of over $6,700.-00 for feed for the marketed pigs and those that died, when under normal conditions it would have cost only $3,255.00. Under his amendment defendant claimed only a loss of $3,255.00 for excessive feed required, and his recovery could not exceed that sum. It was properly submitted to the jury.

The other special items of $360.00 for the reasonable cost of medication required and $444.50 for veterinary services and medicines furnished were not seriously disputed and were adequately supported in the record. The claimed loss of other fat hogs belonging to defendant, which he said were infected by the pigs in question, in the sum of $151.76, although disputed, was also sufficiently shown for jury considera-

tion and determination. We find no error in submitting those issues to the jury.

In Jaeger v. Hackert, supra, as here, defendant's chief complaint was in regard to the testimony as to the value of labor lost, feed, gas, oil, litter, and medicine for turkey poults which had died of a disease they had contracted at the time plaintiff purchased them. There we found the testimony of plaintiff that she valued her labor in caring for the turkeys at about $1,650.00 and the amount spent for feed, etc. at about $1,816.00, was proper and sufficient to establish her loss in damages. It was for the jury to set the amount pursuant to that evidence. We said therein at page 390 of 241 Iowa, page 49 of 41 N.W.2d: "If the warranty was breached plaintiff was also entitled to the expense of taking care of the poults that died by reason of the breach."

III. Appellant further contends that the court erred in submitting the purchase price of the pigs as a factor in determining the difference in value as warranted and their actual value. It claims there is no competent evidence as to the value of the delivered pigs warranted as to quality and the value of the pigs in the condition defendant claims they were at that time. We cannot agree.

The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from a breach of warranty. Section 554.2714(2), Code of 1966. In other words, it is the loss proximately resulting from the failure to deliver the goods as warranted. Although the burden to prove his damages, if any, by good and competent evidence is upon the claimant, we think he has done so here in a clear and certain manner. Qualified and competent veterinarians testified the loss of these pigs was the proximate result of the disease affecting this herd at the time of delivery to defendant.

It is generally held that the price for which personal property sells at

a bona fide sale is competent evidence of its value. Reed v. Bunger, supra, 255 Iowa 322, 331, 332, 122 N.W.2d 290, 296; Conditioned Air Corp. v. Rock Island Motor Transit Co., 253 Iowa 961, 966, 114 N.W.2d 304, 308; Drager v. Carlson Hybrid Corn Co., Inc., supra, 244 Iowa 78, 87, 56 N.W.2d 18, 24. As previously noted, under our law the proper measure of damages for breach of warranty is ordinarily the difference between value of the goods as they were (diseased and exposed animals here) and value as they would have been if as warranted (the price paid at a bona fide sale). Section 554.2714(2), Code of 1966; Dailey v. Holiday Distributing Corp., supra, 260 Iowa 859, 876, 151 N.W. 2d 477, 489; Turner v. Kunde, supra, 256 Iowa 835, 842, 128 N.W.2d 196, 200.

In Reed v. Bunger, supra, we pointed out that where, as here, the purchaser of the animals being qualified to testify as to their value does so, there is competent evidence thereof which the jury might or might not believe. Defendant here valued the pigs as warranted at $23.00 per head, the price he paid for them, and said his loss for those 191 that died as a result of the ailment suffered at the time of delivery was total, for dead pigs have no value.

Appellant argues that such evidence does not indicate what the value of the pigs was at the time of delivery and that by submitting to the jury the cost of each pig that died as a measure of damage, the trial court left the defendant in the position of being able to retain the pigs, treat or not treat the pigs as he wished, and then recover from plaintiff for each pig that died. We find no merit in this argument. Under section 554.2711, Code of 1966, the purchaser could retain the pigs and also collect damages for the breach if he showed the pigs were not as warranted, were diseased when delivered to him, and that he properly cared for and administered to the animals in an effort to save them. This we believe he did, and that issue of fact was under proper instruction decided in his favor by the jury.

Dr. Sievers, the defendant's local veterinarian, was called to diagnose and treat the pigs as soon as it was apparent there was a possibility that the pigs or some of them were diseased, thus performing his duty to properly care for them. Doden v. Housh, supra, 251 Iowa 1271, 105 N.W.2d 78. Also see Turner v. Kunde, supra. There is ample evidence from which the jury could determine that the defendant had done everything he could to minimize damages and to save each pig possible. They were under constant medication until cold weather froze the water troughs, and they were actively attended by a veterinarian. Under this record we are satisfied that the jury could find the pigs lost were the proximate result of the disease infecting this herd at the time of delivery, that it was not necessary to show the value of the diseased pigs at that time to arrive at defendant's loss, and that evidence of their purchase price was competent to show their value as warranted. This difference between that value and no value would be the reasonable value of the 191 lost pigs. No other cause of the loss appears and we can think of no other measure of loss which would be as clear and certain. We are not advised as to any other use defendant may have made of diseased pigs.

This is not the same situation found in Drager v. Carlson Hybrid Corn Co., Inc., supra, 244 Iowa 78, 56 N.W.2d 18, relied upon by appellant. In that case plaintiff attempted to recover the contract price for corn he had purchased that was unfit for the purpose for which it was purchased. Therein it was held that where the corn had been kept and had value for feed, even though unfit for the purpose purchased, that is, seed, the buyer is still liable for the value of the corn as feed. We went on to say at page 87 at 244 Iowa, page 23 of 56 N.W.2d: "If the unfit corn were worthless defendant would be entitled to such maximum relief as to so much of the corn. However since the corn unfit for seed admittedly has a substantial market value for feed it is only just that de-

fendant, if it keeps the corn, should be liable for such value." In the case at bar the diseased pigs which eventually died, of course, had no market value. On the other hand, they were a liability as defendant was required to exercise reasonable care to feed and treat them for their ailments. Plaintiff was made aware of this dilemma and knew, as a result of the quarantine imposed by the State, that defendant could not permit removal of them from his farm. An attempt to show that this care and treatment was inadequate was made, but the jury found defendant had exercised proper care and we are convinced the evidence was sufficient to sustain that finding.

IV. We find no occasion here to again review our past holdings as to what constitutes a breach of an express or implied warranty, but see Dailey v. Holiday Distributing Corp., supra, 260 Iowa 859, 866, 151 N.W.2d 477, 482. It is sufficient to say here the written conditional guarantee and bill of sale delivered after defendant had purchased the pigs, although acknowledged by him, had no effect on the oral, express and implied warranty of the pigs sold under the contract. There is ample testimony to sustain a finding that the seller was aware of the purpose for which these pigs were purchased, and that defendant relied upon the seller's skill and judgment, at least in part, to furnish animals fit for the purposes purchased. This is sufficient. As pointed out in the cases cited herein, it was not required that defendant show the seller knew of any latent or hidden defect to sustain a breach of implied warranty action or that all the pigs in the herd were infected at the time of delivery. Jaeger v. Hackert, supra, at page 393 of 241 Iowa, 41 N.W.2d 42.

We have carefully examined the court's instructions in this regard and find them proper and complete. In fact, plaintiff's objections to them, in substance, was that there was insufficient evidence to permit their submission, a contention we find without merit.

V. No further errors having been assigned and finding no merit in the assigned errors, we must affirm the judgments of the trial court herein.

Affirmed.

All Justices concur.