**IN THE SUPREME COURT OF IOWA**

No. 22 / 04-0706

Filed August 25, 2006

**CAROL MILLER, DOROTHY MILLER,
ROBERT DWYER, HOLLY DWYER,
LINDA FRANCK, and DEBRA LITTS**,

     Appellees,

vs.

**KENNETH ROHLING, TODD ROHLING
and JANA ROHLING**,

     Appellants.

---

Appeal from the Iowa District Court for Clinton County, Nancy S. Tabor, Judge.

Defendants appeal judgment for damages based on temporary nuisance. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Rand S. Wonio of Lane & Waterman LLP, Davenport, for appellants.

Steven J. Kahler of Schoenthaler, Roberg, Bartelt & Kahler, Maquoketa, for appellees.

Paul S. Swinton of Morain, Burlingame & Pugh, P.L.C., West Des Moines, for amici curiae Iowa Farm Bureau Federation, Iowa Institute for Cooperatives, Agribusiness Association of Iowa, and Iowa Corn Growers Association.

Christina L. Gruenhagen, West Des Moines, for amicus curiae Iowa Farm Bureau Federation.

**TERNUS, Justice.**

The appellants, Kenneth Rohling, Todd Rohling, and Jana Rohling, appeal an adverse judgment for nuisance damages entered after a bench trial on claims asserted by the appellees, Carol Miller, Dorothy Miller, Robert Dwyer, Holly Dwyer, Linda Franck, and Debra Litts. The defendants contend the trial court erroneously found their grain drying and storage activities constituted a nuisance. They also challenge the court's calculation of damages and award of attorney fees, which together totaled over $190,000. Although we find the evidence sufficient to support the trial court's finding of a nuisance, we do not think the record fully sustains the trial court's damage awards or the recovery of attorney fees. Accordingly, we affirm in part, reverse in part, and remand for entry of a new judgment consistent with this opinion.

I. *Background Facts and Proceedings.*

The parties own various parcels of land in a commercial area of Wheatland, Iowa. Prior to the defendants' purchase of their property in 1992, the site had been used for a commercial grain storage and drying facility. The defendants also used the property for the storage and drying of grain, but only for their own crops. When the defendants bought the land, there were three grain bins, a grain dryer, and associated equipment on the property. The defendants added two additional bins, one in 1996 and one in 1999. After this lawsuit was filed in 2003, they erected two more, for a total of seven grain bins at the site.

The plaintiffs live on residential lots in the vicinity of the defendants' property. In addition, the Dwyers own a rental property adjacent to the lot on which they reside. According to the plaintiffs, grain dust, corn chaff, and beeswings[1] are released, primarily during the harvest season, when grain is

_____

[1] "Beeswings" are "very thin filmy pieces of bran." *Webster's Third New International*

transferred to and from the defendants' bins. The plaintiffs testified these emissions have increased since 1998 and physically accumulate on their properties to the extent the fugitive dust interferes with the plaintiffs' use and enjoyment of their land. The plaintiffs further assert noise from the grain dryer and truck traffic is annoying and makes it difficult for them to sleep and converse in their homes.

The plaintiffs brought this nuisance suit to recover damages and obtain injunctive relief in 2003 after the Wheatland city council issued a building permit allowing the defendants to erect two additional grain bins. Following the district court's refusal to order a temporary injunction, the defendants built two new bins and made improvements to the conveying system in all but one bin. These improvements were intended to enclose the system for filling the bins, thereby eliminating the open transfer system that allowed debris to escape into the air.

The plaintiffs' claims proceeded to a bench trial in March 2005. In addition to testifying to the complaints outlined above, the plaintiffs introduced into evidence a videotape that showed corn chaff, beeswings and dust on outdoor furniture, on a grill, on a fence, and floating in one of the plaintiffs' swimming pools. The plaintiffs asked for damages for the annoyance, discomfort, and inconvenience caused by the emissions and noise emanating from the defendants' land, as well as for the cost of additional cleaning necessitated by the particulate matter settling on the plaintiffs' property and personal belongings. No bills or receipts were presented at trial to document any out-of-pocket expenses.

Based on this evidence, the trial court found the use of the defendants' bins in 2001, 2002, and 2003 constituted a temporary nuisance. The court determined plaintiff Dorothy Miller had testified to the

_____

*Dictionary* 197 (unabr. ed. 2002).

most credible list of cleanup expenses, with the exception of the cost of rodent control. Using Miller's testimony as a basis, the court awarded each plaintiff $1670 for cleanup in each of the three years in which the defendants operated a nuisance. On the plaintiffs' claims for loss of use and enjoyment of their property, the court determined a reasonable figure for such loss was $6 per hour for sixteen hours per day for a period of ninety days, totaling $8640 per year per plaintiff. In addition, the court awarded plaintiff Holly Dwyer $1900 in lost rental value based on evidence Dwyer reduced the rent charged to a tenant due to the grain residue falling onto the rental property. In summary, each plaintiff was awarded $30,930 in compensatory damages, with the exception of Holly Dwyer, who was awarded $32,830. In addition to the compensatory damage awards, the court ordered the defendants to pay $4000 towards the plaintiffs' attorney fees, notwithstanding the absence of any demand for such fees.

II. *Scope of Review.*

The plaintiffs brought this action at law. *See Weinhold v. Wolff*, 555 N.W.2d 454, 459 (Iowa 1996) (indicating action to recover nuisance damages may be brought at law or in equity). Our review of the trial transcript confirms that the case was tried as a law action. Therefore, our review is for correction of errors of law. *See In re Estate of Boyd*, 634 N.W.2d 630, 635 (Iowa 2001) ("The scope of review depends on how the case was tried in the district court."); Iowa R. App. P. 6.4. Under this scope of review, "[t]he trial court's findings of fact are binding on us if supported by substantial evidence." *Bates v. Quality Ready-Mix Co.*, 261 Iowa 696, 699, 154 N.W.2d 852, 854 (1967). We view the evidence "in the light most favorable to the trial court's judgment." *Id.*

III. *Existence of a Nuisance.*

Iowa has statutory nuisance provisions that are supplemented by the common law of nuisance. *See Perkins v. Madison County Livestock & Fair Ass'n,* 613 N.W.2d 264, 271 (Iowa 2000). Under the Iowa Code and under common law, the use of property or structures in such a manner as to unreasonably interfere with another's reasonable use and enjoyment of his property or in such a manner as to injure another's health is a nuisance. *See id.*; Iowa Code §§ 657.1, .2 (2003). We apply the following rules and analysis in determining whether one's use of his property constitutes a nuisance:

> Whether a lawful business is a nuisance depends on the reasonableness of conducting the business in the manner, at the place, and under the circumstances in question. Thus the existence of a nuisance does not depend on the intention of the party who created it. Rather, it depends on the following three factors: priority of location, the nature of the neighborhood, and the wrong complained of. . . .
>
> A fact finder uses the normal person standard to determine whether a nuisance involving personal discomfort or annoyance is significant enough to constitute a nuisance. The normal-person standard is an objective standard. . . .
>
> ". . . If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant."

*Weinhold*, 555 N.W.2d at 459 (citation omitted).

The defendants argue that although the trial court found the defendants had priority of location, it gave insufficient consideration to that fact. After reviewing the record, we disagree that the defendants had priority of location as that term is used in a nuisance analysis. It is true the defendants' property was being used for grain drying and storage prior to any of the plaintiffs acquiring an interest in their property with the exception of Dorothy Miller. But priority of location refers not to who lived

on or owned their property first, but "whether the complaining party moved to the *nuisance.*" *Perkins*, 613 N.W.2d at 271. Thus, the relevant point in time at which to examine priority of location is just prior to the commencement of the nuisance-producing activities. *See id.* at 271-72 (examining whether plaintiffs acquired their property before defendant began using fairgrounds for races, not whether plaintiffs owned their property before defendant established fairgrounds).

Here, the plaintiffs claimed the grain debris from the defendants' property did not interfere with the use and enjoyment of their property until the emissions began to increase after 1998. The trial court found there was no unreasonable interference until 2001. The evidence showed these dates coincided with increased storage capacity at the site and a corresponding increase in the amounts of grain being loaded and unloaded at that location. There was no evidence the grain storage and drying activities bothered neighboring properties prior to the late 1990s. By that time, all of the plaintiffs had moved into their homes. Therefore, the plaintiffs, not the defendants, had priority of location. *Id.* at 272 (holding "use of the fairgrounds that is claimed to constitute a nuisance did not begin until after the plaintiffs were already on their properties," so "plaintiffs have priority of location"); *see Higgins v. Decorah Produce Co.*, 214 Iowa 276, 282, 242 N.W. 109, 112 (1932) (holding complainant, who acquired property adjacent to poultry plant that was subsequently enlarged to an extent that the increased odors and noise constituted a nuisance, was not estopped from maintaining nuisance action).

Even though the trial court erred in deciding the defendants had priority of location, that error does not help the defendants. The plaintiffs' priority of location is a circumstance that weighs heavily in the *plaintiffs'* favor. *Wienhold*, 555 N.W.2d at 459-60; *Bates*, 261 Iowa at 704, 154

N.W.2d at 858. Thus, contrary to the defendants' contention that the priority-of-location factor precludes the existence of an actionable nuisance, this factor supports the trial court's decision.

The defendants also contend the trial court's nuisance finding cannot stand in view of the court's determination that the area in question was commercial in nature. But that determination does not preclude the finding of a nuisance. *See Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 180 (Iowa 2004) (finding evidence sufficient to support finding of nuisance even though defendant's "confinement operation was a customary enterprise in the neighborhood"); *Bates*, 261 Iowa at 704, 154 N.W.2d at 858 (affirming finding of nuisance notwithstanding commercial character of neighborhood). It is only one factor for the court to consider. *See Weinhold*, 555 N.W.2d at 459. Nor does the existence of similar businesses in the area preclude a finding that the defendants' establishment was a nuisance given the differing testimony on whether the other grain operations in town created the complained of emissions. *See Bates*, 261 Iowa at 704, 154 N.W.2d at 858 (stating evidence showed "other commercial enterprises in the area created no excessive noise or dust" and "the noise and dust complained of by plaintiffs . . . came from defendant's plant").

Although the testimony was conflicting, there was evidence the material coming from the defendants' property significantly increased when the defendants enlarged their grain-storing capacity and increased their grain activities on the property. There was also credible testimony that the emissions during harvest season were so pervasive that they blanketed not only the plaintiffs' vehicles and personal property located outside their residences, but also filtered into the interior of the plaintiffs' homes. These deposits, according to the plaintiffs, required constant house cleaning and were so significant that the plaintiffs used brooms and shovels to remove

the material from their yards and driveways. The plaintiffs also testified they could not work outside at times because there was so much particulate matter in the air that they could not breathe. Although the defendants introduced the testimony of witnesses who said the emissions from the defendants' grain site were not that bothersome, it was for the trial court to determine which testimony was most credible. *See Riter v. Keokuk Electro-Metals Co.*, 248 Iowa 710, 722, 82 N.W.2d 151, 158 (1957). Based upon our review of the record, we cannot say the trial court erred in determining a person of normal sensibilities would be disturbed and substantially annoyed by the invasion of dust, corn chaff and beeswings from the defendants' operations during harvest season. In addition, evidence of the noise caused by vehicles hauling grain and by the grain dryer and of the effect of this noise on the plaintiffs provides further record support for the trial court's determination the defendants' activities caused significant personal annoyance to the plaintiffs. Because substantial evidence supports the trial court's finding of a nuisance, we are bound by that finding on appeal.

IV. *Compensatory Damages.*

The defendants challenge the trial court's award of compensatory damages on four bases: (1) the court erred in using a mathematical formula to calculate the damages for interference with use and enjoyment of property; (2) there was no factual basis for the court's determination that the defendants' activities interfered with the plaintiffs' use and enjoyment of their property on ninety days each year; (3) there was no factual basis for the court's determination that each plaintiff suffered equally from the defendants' activities; and (4) there is insufficient evidence to support the award of cleanup expenses.

We start with the general measure of damages for a temporary nuisance: "the diminution in the rental value of the property caused by the nuisance, plus any special damages." *Schlotfelt v. Vinton Farmers' Supply Co.*, 252 Iowa 1102, 1115, 109 N.W.2d 695, 702 (1961). Special damages include the " 'personal inconvenience, annoyance, and discomfort caused by the existence of a nuisance.' " *Weinhold*, 555 N.W.2d at 465 (citation omitted). It also includes the reasonable cost of removing offensive nuisance deposits. *See Earl v. Clark*, 219 N.W.2d 487, 490 (Iowa 1974). There is no "precise rule for ascertaining [special] damages"; the amount must be based upon the sound judgment of the fact finder giving impartial consideration to the evidence. *Weinhold*, 555 N.W.2d at 465. This court will not disturb a damage award if "there is any reasonable basis in the record" to support it. *Id.* We now address the specific complaints made by the defendants.

A. *Use of formula.* Plaintiff Holly Dwyer testified the plaintiffs felt they were entitled to compensation for 16 hours a day for the 140 days a year that they were unreasonably bothered by the defendants' activities. She explained the 16-hour figure was based on the fact that "most normal people would be out of their home a period of eight hours a day." The 140-day figure was based on the days of peak emissions during harvest season. She also testified they believed a rate of $10 per hour for this annoyance and inconvenience was fair. The other plaintiffs adopted this formula without further elaboration. The court calculated the plaintiffs' damages for loss of use and enjoyment using a rate of $6 per hour for 16 hours a day for 90 days a year.

The defendants claim this reasoning was erroneous, citing our cases stating that damages for pain and suffering cannot be measured by any exact or mathematical standard. It is true no precise formula exists for

determining damages for physical or mental pain and suffering. *See Oldsen v. Jarvis*, 159 N.W.2d 431, 434 (Iowa 1968) ("It is of course true, as the jury was instructed, that damages for pain and suffering cannot be measured by any exact or mathematical standard and rest in the sound discretion of the jury based upon a fair and impartial consideration of the evidence."). Nonetheless, the use of a mathematical formula, while not required, is not forbidden.

This court has refused to find any error in counsel's use of a per diem formula to support the amount requested by a plaintiff for intangible damages in personal injury cases. *See Cardamon v. Iowa Lutheran Hosp.*, 256 Iowa 506, 512, 128 N.W.2d 226, 230 (1964) (finding no prejudicial error in counsel's argument that plaintiffs' pain and suffering was worth $2 per hour); *Corkery v. Greenberg*, 253 Iowa 846, 854-55, 114 N.W.2d 327, 332 (1962) (holding per diem argument by plaintiff's attorney not improper). We noted in *Corkery* that it was possible the jury used "some modification" of the formula suggested by plaintiff's counsel in setting plaintiff's recovery. 253 Iowa at 855, 114 N.W.2d at 332. Even so, we found no reversible error. *Id.*

We see no distinction here where a per diem calculation was used by the court in determining reasonable compensation for loss of use and enjoyment of property. *See generally Weinhold*, 555 N.W.2d at 465 (analogizing special damages in nuisance case to intangible damages in personal injury cases). The court did not commit reversible error in relying on a mathematical formula to compute the plaintiffs' damages.

B. *Awarding damages for ninety days of interference.* The defendants contend there was no factual basis for the court's determination that the defendants' activities interfered with the plaintiffs' use and enjoyment of their property on ninety days each year. The plaintiffs claimed the

defendants' activities constituted a nuisance during harvest season. The parties disputed how long harvest season lasted. The plaintiffs argued it was 140 days long, from August through December. The defendants testified it was between seven and eight weeks, beginning in mid-September and ending by December. In its ruling, the trial court resolved the conflicting testimony, concluding there was increased usage of the property from September through December but awarding damages only for ninety days in view of the fact that on some days during this time period activities on the property would be limited due to weather conditions and equipment breakdowns. We think the trial court's finding that the defendants interfered with the plaintiffs' use and enjoyment of their property ninety days a year is supported by substantial evidence.

C. *Identical loss-of-use-and-enjoyment damages.* The trial court awarded each plaintiff $8640 per year for loss of use and enjoyment. The defendants claim the damages sustained by each plaintiff cannot be equal as each plaintiff lived in different proximity to the defendants' property and was impacted differently by the defendants' grain storage activities. *Cf. Wambsgans v. Price*, 274 N.W.2d 362, 366 (Iowa 1979) ("Mental anguish is suffered individually, not jointly, and differs greatly from person to person.").

Our review of the record supports the trial court's implicit finding that the impact of the emissions and noise on the plaintiffs' properties was largely the same, notwithstanding some minor variances in the proximity of each residence to the nuisance. On the other hand, the record also demonstrates that plaintiff Carol Miller was clearly not affected by the emissions to the same extent as the other plaintiffs.

Carol Miller did not reside in her Wheatland home full-time. She testified she is a joint owner of the home occupied by her mother, plaintiff

Dorothy Miller. Carol said she principally resides in Illinois, but stays with her mother in Wheatland one or two weeks each month. There was no evidence that Carol suffered any magnified inconvenience or annoyance not encountered by the other plaintiffs. Under this state of the record, we agree with the defendants that the trial court's decision to award the same compensatory damages to Carol Miller as the court gave to the other plaintiffs is not supported by the evidence. Based on Carol's testimony that she resided in Iowa approximately one-third of the time, the record only supports loss-of-use-and-enjoyment damages equal to one-third the sum awarded by the trial court. Therefore, we reverse the judgment in favor of Carol Miller and remand this case for entry of a judgment in her favor that includes reduced loss-of-use-and-enjoyment damages in the total amount of $8640.

D. *Identical cleanup expenses.* The trial court awarded each plaintiff $1670 per year for cleanup expenses. We conclude the record does not support separate awards of $1670 per year in cleanup expenses to both Dorothy Miller and Carol Miller, who were joint owners of the same property. The trial court's judgment resulted in double recovery of these damages. We have already reversed the judgment in favor of Carol Miller due to insufficient evidentiary support for the award of loss-of-use-and-enjoyment damages. Upon remand, the new judgment entered for Carol Miller shall not include cleanup expenses.

We think the evidence is also insufficient to support an award of three years of cleanup expenses to Holly Dwyer for the rental property. Debra Flynn leased the rental property from the Dwyers for approximately two years during the period in which defendants operated a nuisance. Flynn's testimony established that she was responsible for cleanup of the premises during her tenancy. She testified she paid no rent for the first three months

she occupied the rental house in compensation for her cleanup of the property, installation of some flooring, and inside painting. Thereafter, she negotiated a reduction in her rental payments to compensate her for the ongoing necessity of cleaning up the chaff and other debris emanating from the defendants' facilities. In assessing the damages sustained by Holly Dwyer, the trial court awarded Holly $5010 for three years of cleanup expenses. The record supports recovery of such expenses for only one year because for two years the tenant was responsible for cleaning up the premises. Accordingly, upon remand, the judgment for Holly Dwyer should include only one year of cleanup expenses.

E. *Proof of cleanup expenses.* The defendants claim error regarding the trial court's computation of cleanup expenses due to the absence of any documentary evidence of the costs of cleaning up the particulate matter deposited on the plaintiffs' properties. With some exceptions, the plaintiffs testified they personally cleaned their homes, yards, vehicles and other items of personal property, so there were no bills to document this work. Those plaintiffs who hired persons to clean did not produce any documentation of this expense. Nonetheless, the trial court concluded based upon the testimony of the plaintiffs concerning the deposits on their property and the effort required to clean up such deposits that "the expenses as outlined by Dorothy Miller for the extra cleanup required" were "the most reasonable" and the "list best supported by the evidence."

The trial court's action was appropriate under the following principles:

> If the record is uncertain and speculative whether a party has sustained damages, the fact finder must deny recovery. But if the uncertainty is only in the amount of damages, a fact finder may allow recovery provided there is a reasonable basis in the evidence from which the fact finder can infer or approximate the damages.

*Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 641 (Iowa 1996) (citations omitted). Applying this rule, we have held that a plaintiff's testimony as to the reasonable value of extra labor necessitated by the defendant's conduct is sufficient to support an award of damages. *See Doden v. Housh,* 251 Iowa 1271, 1277-78, 105 N.W.2d 78, 82 (1960); *Jaeger v. Hackert,* 241 Iowa 379, 390-91, 41 N.W.2d 42, 49 (1950). In *Doden,* we stated the fact the plaintiffs testified " 'about' so many hours of extra work were performed rather than to an exact number from a memorandum [did] not defeat recovery." 251 Iowa at 1278, 105 N.W.2d at 82. We also found no error in the allowance of the cost of telephone calls based on testimony that the calls cost "[m]aybe $5.00 at the most." *Id.*

Similarly, the plaintiffs' testimony in this case established a reasonable basis from which the court could approximate the damages sustained by the plaintiffs. Each plaintiff testified to the approximate time he or she spent cleaning fugitive debris from his or her property and personal belongings. Each plaintiff also testified to the reasonable value of his or her time. When a plaintiff had an out-of-pocket expense resulting from the defendants' nuisance, the witness testified to the approximate amount of the expense and the witness's payment of the charge. *Cf. Pexa v. Auto Owners Ins. Co.,* 686 N.W.2d 150, 156 (Iowa 2004) (holding "reasonable value of medical services can be shown by evidence of the amount paid for such services"). This testimony, found credible by the trial court, is sufficient to support the court's award of damages for cleanup expenses, with one exception we now address.

Our review of the evidence revealed one particular in which the trial court's award of cleanup damages is not supported by the record. Miller included in her list of expenses a $500 cost for replanting flower beds. She testified this sum represented the replacement cost of flowers for a six-year

period. Consequently, the annual expense was only $84. Because the trial court included the full $500 amount in its $1670 per-year damage figure, $416 of the annual cleanup expenses awarded by the court are not supported by the evidence. Upon remand, the amount awarded to each plaintiff for cleanup expenses must be reduced by $1248 ($416 per year for three years).

V. *Attorney Fees.*

The trial court ordered the defendants to pay $4000 toward the plaintiffs' attorney fees, a ruling the defendants assign as error on appeal. "Generally, attorney fees are recoverable only by statute or under a contract." *Costello v. McFadden*, 553 N.W.2d 607, 613 (Iowa 1996). Iowa's statutory nuisance law—Iowa Code chapter 657—makes no provision for the recovery of attorney fees. *See* Iowa Code ch. 657. Nor is there any contract between the parties authorizing an award of attorney fees.

There is "a rare exception" to the general rule against the recovery of attorney fees when the defendant " 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993) (citation omitted). There is no allegation of such conduct on the part of the defendants in this case, the trial court made no finding of such conduct, and there is no evidence to support such a finding.

The award of attorney fees was error. The judgment for these fees is, therefore, reversed.

VI. *Summary and Disposition.*

The trial court did not err in finding the defendants' grain drying and storage activities constituted a nuisance. The evidence supports the trial court's award of damages for loss of use and enjoyment of property in the sum of $8640 per year to each plaintiff with the exception of plaintiff Carol

Miller. Because Carol Miller resided at the affected property only one-third of the time and there was no evidence of any loss peculiar to her, her damages for loss of use and enjoyment were necessarily one-third of the damages sustained by the other plaintiffs.

With the exception of $416 of the $500 annual allowance for replanting flower beds, the evidence supports the trial court's determination of the cleanup costs for the affected properties. The record does not, however, support an award of cleanup expenses on the Dwyer rental property for more than one year. Finally, the trial court erred in awarding attorney fees to the plaintiffs.

Based on the errors in the trial court's calculation of damages, we reverse the judgment and remand for entry of new judgments in favor of the plaintiffs in the following amounts: Carol Miller, $8640; Dorothy Miller, $29,682; Robert Dwyer, $29,682; Holly Dwyer, $29,074; Linda Franck, $29,682; and Debra Litts, $29,682. The recovery of attorney fees shall be eliminated entirely from the judgment.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**