**IN THE COURT OF APPEALS OF IOWA**

No. 14-1054
Filed May 20, 2015


**TWC I, L.L.C, f/k/a THE WEITZ COMPANY I, INC. and TWC II, L.L.C., f/k/a THE WEITZ COMPANY II, INC.,**
     Plaintiffs/Counterclaim-Defendants/Appellees/Cross-Appellants,

**vs.**

**CRAIG DAMOS,**
     Defendant/Counterclaim-Plaintiff/Appellant/Cross-Appellee.
_____


     Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.


     A minority shareholder appeals the district court's valuation of his shares of company stock. **AFFIRMED.**


     Steven P. Wandro, Kara M. Simmons, and Shayla L. McCormally of Wandro & Associates, P.C., and Glenn L. Norris of Hawkins & Norris, P.C., Des Moines, for appellant/cross-appellee.

     Robert M. Hogg and Patrick M. Roby of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellees/cross-appellants.


     Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

Craig Damos appeals the district court's valuation of his shares of corporate stock in TWC I, L.L.C, f/k/a The Weitz Company I, Inc. and TWC II, L.L.C., f/k/a The Weitz Company II, Inc. (the Weitz companies). He claims the court's valuation was not supported by substantial evidence because the Weitz companies did not offer a valuation that met the standards laid out in Iowa law. He also claims the district court should have awarded him attorney fees and costs. In addition to defending the district court's decision, the Weitz companies cross-appeal claiming the district court should have awarded attorney fees and costs to them. Because we find substantial evidence to support the district court's valuation of the price of the shares of corporate stock, we affirm the district court's decision. We also find substantial evidence to support the district court's decision to deny both parties' claims for attorney fees and costs.

**I. Background Facts and Proceedings.**

The Weitz companies were employee-owned construction companies based in Des Moines. On December 13, 2012, the Weitz companies were sold to OCI Construction Holding Limited. The sale was negotiated by FMI Capital Advisors, Inc. Between 2000 and 2010 Damos was the chief financial officer and later the chief executive officer and chairman of the Weitz companies. He left his position in 2010 but retained his shares of the companies' stock and was a minority shareholder at the time of the sale.[1] The Weitz shareholders voted to approve of the sale to OCI, but Damos was one of two shareholders to vote

---

[1] The parties stipulated at trial that the total number of shares of the Weitz companies at the time of the sale was 294,121.5. Damos owned 9130 of those shares.

against the sale and the only shareholder to exercise his right to an appraisal under Iowa Code sections 490.1301–.1331 (2013).

The Weitz companies provided a written appraisal notice to Damos that included the Weitz companies' estimate of the value of the stock at $75.01 per share. This was also the price per share that resulted from the sale. The Weitz companies paid Damos this valuation with interest. Damos disagreed with this valuation and demanded payment of $215.73 per share plus interest, less the amount he had already been paid.[2] When the parties could not reach an agreement, the Weitz companies initiated the lawsuit for the court to determine the fair value of Damos's shares under Iowa Code section 490.1330. As the district court noted in its decision, there was no dispute that the case was properly before the court or that the statutory requirements leading up to the lawsuit had been satisfied. The only dispute was over the value of the stock, which under the statute was to be valued "[i]mmediately before the effectuation of the corporate action to which the shareholder objects"—in this case Damos objected to the sale of the companies to OCI. Iowa Code § 490.1301(4)(a)(1). That dispute could be divided into a disagreement over the value of the Weitz companies' accounts receivables and the value of the backlog.[3]

Both parties submitted expert reports and testimony on the value of the companies, and both experts agreed on the methodology to use to value the Weitz companies—net asset value method. In support of his valuation, Damos

---

[2] Prior to trial, Damos adjusted his demand to $198.84 per share based on updated financial information he received from the Weitz companies through discovery.
[3] The backlog is the future work that the Weitz companies had contracted to do but which had not yet been completed.

offered the opinion of Ronald Nielsen, a partner in the firm of CliftonLarsonAllen, LLP.[4] Nielsen valued the accounts receivables above what was reported in the Weitz companies' financial statements after identifying three major claims he believed would have a higher anticipated collection than what was on the Weitz companies' financial statements. He also calculated the backlog amount at the gross margin reducing the claim by only direct costs and not indirect overhead costs. The price per share that Nielsen calculated was $198.84.

Weitz offered the expert opinion of Eric Engstrom of Engstrom Business Valuation, LLC.[5] Engstrom determined in his report that the value of the backlog was significantly less than what Nielsen had calculated based on the indirect overhead costs and the fact that a buyer of a company with a significant backlog assumes the risk of obtaining a profit on this work the company is obligated to do. Engstrom calculated the backlog was worth $1.5 million whereas Nielsen had estimated the backlog at $16.5 million. As to the accounts receivable, Engstrom adjusted the figure based on anticipated lower collection results as reported by two reports created in anticipation of the OCI sale.[6] Nielsen had estimated the accounts receivables at over $42 million, whereas Engstrom

---

[4] Nielsen also holds the following certifications: certified public accountant (CPA), accredited in business valuation (ABV), certified valuation analyst (CVA), certified fraud examiner (CFE), accredited senior appraiser (ASA), and certified in financial forensics (CFF).

[5] Engstrom is a chartered financial analyst (CFA), a certified public accountant (CPA), and accredited in business valuation (ABV).

[6] Those two reports included a report from OCI's attorney, Seyfarth Shaw, estimating the liquidation value of the accounts receivables to be $18,223,798. In response to this report, the Weitz companies asked their general counsel, David Strutt, to report his evaluation of the accounts receivables. Strutt reported to the Weitz companies that the likely recovery would be $35,765,000 and the worst case scenario would result in a recovery of $16,455,000.

estimated the value was a little over $18 million. The total price per share that Engstrom calculated was $70.81.

The district court, after a three-day bench trial, issued a thorough and well-reasoned thirty-two page decision, accepting Engstrom's valuation of the shares at $70.81. As the Weitz companies had already paid Damos $75.01 per share, Damos was not entitled to any further payment, and under the law, the Weitz companies were not entitled to recover for the overpayment. The court also denied both parties' requests for attorney fees and costs as it concluded neither party failed to comply with Iowa Code chapter 490, or acted arbitrarily, vexatiously, or not in good faith.

From this ruling, both parties appeal.

## II. Scope and Standard of Review.

Because this case was tried to the district court at law, our review is for correction of errors at law. *Nw. Inv. Corp. v. Wallace*, 741 N.W.2d 782, 785 (Iowa 2007). "The district court's findings of fact are binding on us if supported by substantial evidence." *Id.* We view the evidence in the light most favorable to the district court's judgment. *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006). Under this standard of review, "[w]e neither weigh the evidence nor the credibility of witnesses." *Eventide Lutheran Home for the Aged v. Smithson Electric & Gen. Constr., Inc.*, 445 N.W.2d 789, 792 (Iowa 1989).

## III. Substantial Evidence-Corporate Stock Valuation.

Under Iowa Code section 490.1302(1)(c), a shareholder is entitled to appraisal rights and to obtain the fair value of the shareholder's shares if the corporation disposes of its assets and the shareholder is entitled to vote on the

disposition. The shareholder must give the corporation notice of the shareholder's intent to demand payment if the corporate action is taken. *See* Iowa Code § 490.1321. If the corporation takes the action, the corporation must provide to the shareholder an appraisal notice and form estimating the fair value of the shares. *See id.* § 490.1322. The shareholder can exercise the appraisal right if the shareholder returns the form and deposits the shares with the corporation. *See id.* § 490.1323. The corporation must then pay the shareholder the fair value it determined for those shares together with interest. *See id.* § 490.1324. If the shareholder is dissatisfied with the price, the shareholder can notify the corporation of the shareholder's estimate as to the fair value and demand payment, less any payment already made. *See id.* § 490.1326. The corporation then can seek court action to determine the value of the shares at issue by filing suit within sixty days of the demand made by the shareholder. *See id.* § 490.1330. The parties agree that all the statutory requirements were met in order to seek the court's appraisal of Damos's stock in the Weitz companies.

The fair value of the stock in question is determined "[i]mmediately before the effectuation of the corporate action to which the shareholder objects." *Id.* § 490.1301(4)(a)(1). The fair value is to be determined "[u]sing customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring an appraisal." *Id.* § 490.1301(4)(a)(2). "There is no predominant, perfect formula for arriving at fair value." *Nw. Inv.*, 741 N.W.2d at 786. The facts of the case control what methodology should be used. *Id.* Some of the factors that have been identified by our courts as helpful to the fair-value analysis include:

the rate of dividends paid, the security afforded that dividends will be regularly paid, the possibility that dividends will be increased or diminished, the size of the accumulated surplus applicable to the payment of dividends, the record of the corporation, its prospects for the future, the selling price of stocks of like character, the value of its assets, book values, market conditions, [and] the reputation of the corporation.

*Sieg Co. v. Kelly*, 568 N.W.2d 794, 798 (Iowa 1997). But "the court should consider any relevant factor not inconsistent with the statutory definition of 'fair value.'" *Id.*

In asserting on appeal that the district court's decision is not supported by substantial evidence, Damos claims the district court erred when it "rel[ied] almost exclusively on the transaction price, misunderstood purchase price accounting, and did not rely on the highest level of corroborative evidence available to the court—[the] Weitz [companies'] own financial statements." First, there is no indication in the record that Engstrom did not rely on the Weitz companies' own financial statements.

With respect to Damos's claim the court erred in considering the price OCI paid to purchase the Weitz companies, our supreme court has stated the circumstances of a transaction are relevant evidence in seeking to establish the value of a corporation. *Ely, Inc. v. Wiley*, 587 N.W.2d 465, 469 (Iowa 1998). We note the court did not exclusively rely on the purchase price but instead considered both experts' opinions in light of the facts and circumstances the companies were experiencing at that time. The Weitz companies were experiencing the effects of the economic downturn, having laid off one-half of the employees and incurred obligations to pay those laid off the value of their shares, an obligation the companies could not afford to perform at that time. The

companies had difficulties retaining their bonding companies due to the decrease in working capital. The court noted the companies had stopped paying dividends and were unlikely to make dividend payments in the foreseeable future. The Weitz companies also experienced a significant operating loss in 2011. After noting the background of the companies' financial condition and the circumstances surrounding the sale, the court concluded the transaction price was a relevant factor. We find no error in the court's consideration of the price from the OCI sale.

With respect to Damos's claim the court misunderstood purchase price accounting, Damos asserts the court should not have relied on Engstrom's opinions because Engstrom did not conduct a full appraisal under chapter 490 but instead relied on the work he previously performed for the Weitz companies, before and after the sale, to criticize Nielsen's report. Damos claims Engstrom's opinions are contrary to Iowa law because the opinions relied on the work he performed after the sale to OCI to create an "opening balance sheet" for the new company based on the sale price and then worked backwards to arrive at his figures. Damos maintains this was in error because the fair value analysis must be based on presale values.

Both Engstrom and Nielsen agreed as to the proper methodology to use in appraising the companies prior to the transaction—net asset value method. The only real fighting issues between the two were the values assigned to various assets of the companies. Thus, we conclude it was immaterial that Engstrom did not create an entirely new appraisal out of whole cloth, but instead, he

highlighted the areas of disagreement he had with Nielsen's valuation based on his own knowledge and investigation.

While Engstrom did provide services to the new company after the sale, his opinions as to the value of the Weitz companies were generated from information and reports generated before the sale. Engstrom relied on the reports from the Weitz companies' general counsel and from OCI's attorneys in valuing the accounts receivables significantly less than Nielsen had valued them in his report. Both the Weitz companies' report and OCI's report were completed months before the transaction was completed. While Engstrom's opinion as to the value of the backlog was prepared after the transaction during his work to prepare the opening balance sheet for the new company, his opinion that the backlog had little to no value to the Weitz companies was supported by other evidence and opinions generated before the sale, including the officers of the Weitz companies, an evaluation done by FMI, and the independent evaluation done on behalf of the Weitz companies, which gave a recommendation to the companies as to fairness of the sale.

Next, Damos asserts the use of the sale figure was not proper because the sale was not an arms-length transaction. He claims it was more akin to a forced sale because the Weitz companies did not have enough reserves to pay outstanding debt, only one buyer was courted, and the companies felt compelled to sell.

We first note that this contention is at odds with Damos's assertion that the value of the Weitz companies was higher because they were not a sinking ship but were "weathering the storm" of the economic downturn. Either the

companies were compelled to sell to OCI because of the dire financial situation, or the transaction was an arms-length transaction completed between a willing buyer and a willing seller. Damos cannot have it both ways. Upon our review of the record, we conclude substantial evidence supports the district court's conclusion that this was "not a typical sale of a closely held corporation and more closely mirrored a true arms-length transaction."

The Weitz companies were approached by OCI, through the broker FMI, about the possibility of a sale. FMI and OCI did considerable due diligence in determining the sale price for the company. FMI determined that the companies were generally unsaleable and that the OCI interest was unique. In addition, the Weitz companies hired an independent evaluator to opine as to the fairness of the proposed transaction. That evaluator determined the sale was fair to the Weitz companies' shareholders.

The companies' independent board members unanimously approved the transaction, and the full board did the same, recommending the sale to the shareholders. No individual shareholder owned more than 15% of Weitz I, and no individual shareholder owned more than 10% of Weitz II. The executive officers and directors of Weitz I as a group owned less than 29% of the company, and the executive officers and directors of Weitz II as a group owned less than 5% of that company. While some of the employees and executives continued in their position with the new company, none of the officers with the Weitz companies executed any employment agreements before the transaction or received additional consideration from OCI as a result of the transaction. We agree substantial evidence supports the district court's conclusion the transaction

price was relevant "where shareholders have approved an arm's-length transaction by the requisite statutory approval, the shares are widely dispersed, and appropriate corporate governance processes were followed to address any risk of self-dealing."

Finally, Damos claims that Nielsen gave the only reliable expert opinion as to the value of the shares immediately before the sale, and the district court was wrong not to set the price at $198.84 in accordance with Nielsen's opinion. Ultimately, it is the district court, as the fact-finder, who must evaluate the evidence and weigh the expert opinions. *See Ely, Inc.*, 587 N.W.2d at 469-70 (affirming the district court's decision to accord greater weight to one expert over another). In performing that function the district court concluded:

> The Court determines the Engstrom Report is more credible than the Nielsen Reports.
>
> In addition to making this determination based on the Engstrom Report's correction of clear errors in the Nielsen Reports, the Court finds the Nielsen Reports to not be credible for additional reasons. The record supports a finding that Damos initially determined the fair value that the Nielsen Reports adopted rather than the other way around. This is confirmed in a March 4, 2013 letter from Mr. Nielsen to Damos and his counsel so stating, and further confirmed in Damos's answer to Interrogatory No. 4 so stating. Mr. Nielsen's use of Damos's valuation as a starting and stopping point raise concerns regarding the independence of his opinion.
>
> In addition to a lack of independence, the Nielsen Reports also do not identify or discuss the impact of the Buy-Sells on the value of Damos's shares, although such reporting is clearly required under all applicable standards for business value reporting. It is also clear to the Court that although the Nielsen Reports state in multiple locations that his investigation included communications and discussions with current Weitz management and with its accountants and attorneys, the record does not support such a finding. The record is clear that all materials reviewed by Mr. Nielsen in support of his value opinion were provided to him by Damos from materials Damos had received from Weitz in discovery, and no additional facts were identified as coming from

current management.  The Nielsen Reports also do not disclose or discuss the significant assumptions he made to determine increased value of the Weitz Claims Receivables and to determine backlog value.

On appeal, "[w]e neither weigh the evidence nor the credibility of witnesses." *Eventide Lutheran Home*, 445 N.W.2d at 792.  Based on its assessment that Engstrom's report was more credible, the court set the price for Damos's shares at $70.81.  We affirm the court's decision as we find substantial evidence to support it.

## IV.  Attorney Fees and Costs.

Next, both parties appeal the district court's denial of their respective requests for attorney fees and costs pursuant to Iowa Code section 490.1331.  Damos asserts the Weitz companies acted contrary to Iowa law and paid an arbitrary amount—$75.01—for his shares, entitling him to attorney fees and costs.  Conversely, the Weitz companies claim Damos showed a lack of good faith in preparing the original appraisal calculation for his expert and testifying contrary to all evidence as to the value of the Weitz companies.  Because the Weitz companies assert Damos should have known better based on his knowledge, sophistication, and experience, the Weitz companies believe the court should have awarded attorney fees and costs.

Iowa Code section 490.1331 provides, in part:

> 1. The court in an appraisal proceeding commenced under section 490.1330 shall determine all costs of the proceeding, including the reasonable compensation and expenses of appraisers appointed by the court.  The court shall assess the costs against the corporation, except that the court may assess costs against all or some of the shareholders demanding appraisal, in amounts the court finds equitable, to the extent the court finds such

shareholders acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this division.

    2. The court in an appraisal proceeding may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable, for either of the following:

    a. Against the corporation and in favor of any or all shareholders demanding appraisal if the court finds the corporation did not substantially comply with the requirements of section 490.1320, 490.1322, 490.1324, or 490.1325.

    b. Against either the corporation or a shareholder demanding appraisal, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this chapter.[7]

The award of attorney fees and costs under this section is a two-step process. *Sec. State Bank v. Ziegeldorf*, 554 N.W.2d 884, 893 (Iowa 1996). "As a prerequisite for such an award, the trial court must make a factual finding that the corporation [or shareholder] did not substantially comply with chapter 490 or acted arbitrarily, vexatiously, or not in good faith." *Id.* We review the district court's factual findings on this issue for substantial evidence. *Id.* If the court finds facts present to satisfy the first step, it then has discretion to award fees and costs, and we review the court's award of fees and costs, or its failure to award fees and costs, at this second step for abuse of discretion. *Id.*

The district court denied the claim of both parties based on the first step—that neither party failed to comply with chapter 490 or acted arbitrarily, vexatiously, or not in good faith. In denying Damos's claim for fees and costs, the court stated:

---

[7] We note this statute was amended in 2013, and the amendments became effective January 1, 2014. 2013 Iowa Acts ch. 31, §§ 65, 82. However, we have used the prior version of the statute, which was applicable when this action was filed by the Weitz companies in April 2013. We offer no opinion as to the effect of the recent amendments to this section.

Damos admits that Weitz complied with all requirements of Iowa Code chapter 490 in addressing their dissenter's rights process and that is confirmed by the record. Further, Weitz implemented the transaction under processes which are the model of good corporate governance, including retaining a highly qualified and competent broker and fair value opinion provider, actively engaged its Boards which contain highly qualified members including experienced and highly competent independent members, and full disclosure [of] materials to all interested participants. Weitz's offer to Damos to treat him the same as all other shareholders, using a price well supported by competent and qualified experts and further providing immediate payment in full, notwithstanding the agreed contract terms which required a lower amount and allowed for deferred payments, exemplifies good faith. The Court finds no basis for determining that Plaintiffs have acted arbitrarily, vexatiously, or not in good faith.

With respect to the Weitz companies' claim against Damos, the court stated:

Weitz admits that Damos complied with all requirements of Iowa Code chapter 490 in addressing his dissenter's rights process and that is confirmed by the record. Damos initially claimed two dissenter elections, which is not supported by law, and which required Weitz to incur added legal expense to respond. However, the Court finds this to be inadvertent. Further, as a CPA specifically with valuation experience, and as Weitz's former CFO and then CEO and Chairman with intimate knowledge of Weitz, Damos had the experience, sophistication, and knowledge to conclude that his determinations of fair value were reasoned with respect to facts and law. Valuation of a corporation the size of Weitz, with its many variables, is subject to opinions of wide variance. Based upon a review of all of the evidence, the Court concludes that Damos's actions were not arbitrary, vexatious, or not in good faith as required by the statute to award attorneys' fees and costs in some amount.

Based on our review of the record of the case, the court's factual findings that neither party acted arbitrarily, vexatiously, or not in good faith, and that both parties complied with the applicable code sections in chapter 490, are supported by substantial evidence. We therefore affirm the court's denial of both parties' claims for attorney fees and costs.

**V. Conclusion.**

We conclude substantial evidence supports the court's valuation of Damos's shares and the court's denial of both parties' requests for attorney fees and costs. We therefore affirm the district court's ruling in its entirety.

Costs on appeal are assessed one-half to each party.

**AFFIRMED.**