# IN THE COURT OF APPEALS OF IOWA

No. 16-0621
Filed April 19, 2017

**JAMES HEAL,**
　　　　Plaintiff-Appellant,

**vs.**

**BRIAN ANDERSON,**
　　　　Defendant-Appellee.
_____

Appeal from the Iowa District Court for Iowa County, Ian K. Thornhill, Judge.

Plaintiff appeals from the trial court's ruling finding plaintiff had converted the defendant's personal property and awarding damages in the amount of $64,990.23. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

John W. Pilkington of Nidey, Erdahl, Tindal & Fischer, P.L.C., Marengo, for appellant.

Jennifer L. Zahradnik of Kollmorgen, Schlue & Zahradnik, P.C., Belle Plaine, for appellee.

Considered by Doyle, P.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**BLANE, Senior Judge.**

James Heal appeals from the district court's ruling, following a bench trial, in favor of the defendant, Brian Anderson. Heal maintains the district court erred by finding he had wrongfully converted Anderson's personal property while Heal had a temporary injunction against Anderson. Additionally, he maintains the district court abused its discretion in permitting a lay witness to testify to the value of salvage vehicles on the business premises.

**I. Background Facts and Proceedings.**

Heal owned a parcel of land in Homestead, which had previously been used as a vehicle salvage yard. Anderson approached Heal about buying the parcel. Anderson was unable to meet Heal's asking price, and the parties entered into an oral contract to have Anderson run the business instead.

The parties dispute the terms of the agreement. Heal testified he had complete ownership of the business and he hired Anderson to run it; he stated he provided the building, land, and initial inventory, and was to receive 51% of the profits. Meanwhile, Anderson would run the day-to-day operations and receive the other 49% of the profits. In contrast, Anderson testified he and Heal agreed Heal would allow Anderson to use the land and buildings but Heal's inventory was supposed to be crushed and scrapped.[1] Anderson claimed he was the sole proprietor of the business, named AAA Auto Recyclers—noting the permits and

---

[1] According to Anderson's testimony, a large percentage of Heal's inventory was scrapped. However, when the machine used to crush the cars returned to finish the job, the ground was too soft due to recent wet weather. Heal then told Anderson to use the remaining vehicles if he was able. Anderson moved Heal's inventory to the back and only rarely sold parts off the vehicles—both because of their condition and because Heal lacked titles to them.

bank account were in only his name and the name of the business—and he was to obtain his own inventory. At the end of the first year, Heal and Anderson were to split the profits of the business in half, and then the two parties would discuss the option of Anderson buying the land and buildings on contract. In its written ruling, the district court found Anderson's "assertions as to the details of the agreement to be highly credible and supported by other evidence."

Anderson received keys to the property on October 31, 2010. He spent approximately two months cleaning the property and getting it ready to open the business. In doing so, he cleaned up trash, made the buildings operational (by installing heat and fixing the plumbing), and brought in or fixed the tools and equipment necessary to run the business.

Anderson opened the business on January 1, 2011. His girlfriend assisted by keeping the books for the business. Because Anderson did not want to quit his full-time job until the business was self-sufficient, he initially worked at the salvage yard part-time, and Josh Detling was brought on to manage day-to-day operations.

Anderson used his own resources to build the inventory for the business—some vehicles he brought with him and others he purchased. Anderson kept separate records for parts that were sold off cars he brought in and those that came off Heal's cars that were still sitting on the property. However, the profits from both were re-invested into the business; Anderson did not pay himself a salary.

Heal and Anderson had a good working relationship until August 2011. The relationship then broke down, and AAA ceased operations shortly thereafter.

Specifically, in early August, Anderson sold a 2004 Ford F-150 he purchased with his own money and for his own personal use. He sold the truck for $7000. Anderson intended to deposit this cash, along with $280 in cash from part sales and checks written to AAA, in the business's bank account. Heal happened to be on the property that day, and he offered to deposit the checks and cash so it would not have to remain on the premises throughout the business day. Heal deposited the checks, but he kept the $7280 in cash. Once Anderson realized what he had done—when Heal returned with a receipt from the bank—Anderson confronted Heal. Heal left the property, and he did not return until he locked Anderson out of the business on September 9, 2011.

Heal did not give Anderson any warning before he locked him out of the business on September 9. Later, Anderson entered the property and took his racecar and trailer. The rest of Anderson's tools and inventory remained on the property. On September 23, Heal obtained a temporary injunction, prohibiting Anderson from entering the property or removing any items therefrom. Anderson never sought to have the injunction modified or dismissed, and it remained in place at the time of the trial in September 2015.

Heal filed his petition at law on September 22, 2011. In it, he maintained Anderson had breached their oral contract. At the same time, Heal requested—and received—the injunction preventing Anderson from returning to the property. Anderson filed a counterclaim; he claimed Heal had breached the parties' contract and converted Anderson's property. During the trial, Anderson made additional claims of unjust enrichment and bailment, which the trial court found were tried by consent.

In December 2014, while the temporary injunction was in place, Heal allowed his son, Aaron Heal, to enter the property and operate the salvage yard, including access and use to all of the tools, equipment, and inventory which Anderson left on the property when locked out.

At the bench trial, Heal and Anderson called Josh Detling as a witness in their cases-in-chief. Anderson's counsel asked Detling questions eliciting testimony as to the values of vehicles and salvage parts located at the salvage yard that remained on Heal's property after the lock-out.[2] Heal's counsel objected, asserting that Anderson had not disclosed Detling as an expert witness as required by the trial scheduling order. The trial court overruled the objection and allowed Detling to testify, stating:

> I mean, I think that the—this witness has talked about his experience. He worked there at the time. He can certainly tell me—It wouldn't be expert testimony. It would be testimony from his own experience working at the business what they valued these items at. Certainly his background and what he's testified to here would go to the weight the Court would give that, but I don't see him as being an expert.

Based in part on Detling's testimony, the court found:

> [Anderson] and Josh Detling provided a credible accounting of the items and their values. Specifically, the following items belong to [Anderson] and remained on the premises at the time [Anderson] was prohibited from returning:

---

[2] Detling testified based upon photographs of vehicles on the property taken by attorneys in August 2014.

**Salvage Vehicle Inventory**

| Vehicle | Value |
|---|---|
| (1) Blue Concord | $1,500.00 |
| (2) Red Windstar | $ 850.00 |
| (3) White Concord | $ 800.00 |
| (4) White Taurus #1 | $2,500.00 |
| (5) Red Convertible | $ 600.00 |
| (6) White Suburban | $4,000.00 |
| (7) White Taurus #2 | $1,500.00 |
| (8) F-150 w/ Topper | $1,925.00 |
| (9) White Pick-up | $1,300.00 |
| (10) Blue Grand Prix | $ 350.00 |
| (11) "Legend" Car | $1,500.00 |
| (12) Tipton Race Car | $ 200.00 |
| (13) Cutlass | $ 650.00 |
| (14) White Achieva | <no value proven> |

**Total: $17,675.00**

**Tools & Equipment**

| Item | Quantity | Total Value |
|---|---|---|
| (1) Mac Tools | Various | $9144.26 |
| (2) Battery Charger | 1 | $300.00 |
| (3) Oxy-Act Torch | 1 | $900.00 |
| (4) Oxy-Act Tank | 1 | $400.00 |
| (5) Oxy-Act Cart | 1 | $100.00 |
| (6) LP Salamander | 1 | $80.00 |
| (7) Race Motor-355 | 1 | $4000.00 |
| (8) Race Motor-360 | 1 | $2000.00 |
| (9) Cylinder Heads/Race Motors | 6 | $3600.00 |
| (10) Aluminum Intake Manifolds | 5 | $750.00 |
| (11) Craftsman Tool Box | 1 | $400.00 |
| (12) Tie Down Straps | 4 | $300.00 |
| (13) Chain in Loader/HD Binder | 1 | $75.00 |
| (14) Surveillance System | 1 | $308.87 |
| (15) Sony TV | 1 | $50.00 |
| (16) Printers | 2 | $300.00 |
| (17) MAC AC Recovery Machine | 1 | $1200.00 |
| (18) 305 V8 Motor ('34 International) | 1 | $2000.00 |
| (19) Transmission ('34 International) | 1 | $800.00 |
| (20) 355 Small Block Motor | 2 | $4000.00 |

| | | |
|---|---|---|
| (21) '34 International parts | Various | $2500.00 |
| (22) Wheels and tires | 25 | $3125.00 |
| (23) Router & Power | 1 | $327.10 |
| (24) Carburetor | 1 | $700.00 |
| (25) Signs | 2 | $200.00 |
| (26) Stereo Equipment | 6 | $450.00 |
| (27) MAC Mig Welder | 1 | $1800.00 |
| (28) MAC Mig Welder Tank | 1 | $125.00 |
| (29) Lincoln Welder | 1 | $100.00 |
| | **Total:** | **$40,035.23** |

Following the bench trial, the trial court filed its findings of fact, conclusions of law, and verdict on March 12, 2016.[3] The court found against Heal on his claim of breach of oral contract. The court ultimately found Heal had breached the parties' oral agreement: "By prohibiting Defendant access to the property, Plaintiff failed to perform as he promised under the contract." However, the court did not award Anderson any damages because "recoverable damages from a breach would be the loss in profits to the non-breaching party" and Anderson "failed to provide sufficient evidence upon which the Court could determine whether, and to what extent, the business would become profitable."

Rather, the court ruled Heal had converted Anderson's personal property by "locking [Anderson] out of the property, subsequently obtaining an injunction, and keeping his personal and business property for over four years." The court found Anderson had not had access to his items since September 2011 and was not given a reasonable opportunity to retrieve the items; because the court found Heal's "wrongful actions to be so serious," the court awarded Anderson the full value of the property. "Finally, the court [found] the value of [Anderson's]

---

[3] The trial court noted Anderson did not plead counterclaims for unjust enrichment, replevin, or bailment. The replevin counterclaim was withdrawn. The court held that the other issues were tried by consent under Iowa Rule of Civil Procedure 1.457.

property converted by [Heal] is the total of the inventory ($17,650.00); tools and equipment ($40,035.23); and cash ($7280.00)."[4]

Heal appeals.

## II. Standard of Review.

This case was tried at law, therefore our review is correction of errors at law. Iowa R. App. P. 6.907; *see Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 187 (Iowa 2010). "In a law action, findings of fact are binding on us if supported by substantial evidence." *Blackford*, 778 N.W.2d at 187. When reviewing for correction of errors at law, we view the evidence in the light most favorable to the trial court's judgment. *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006).

## III. Discussion.

Heal contends the district court erred in finding that he had converted Anderson's property; he maintains his actions could not be wrongful because they were taken pursuant to a court-ordered injunction. Additionally, he notes Anderson never took any action to have the injunction modified or cancelled.

Unlike the district court, we start with Anderson's claim of bailment. "[W]hen a person comes into lawful possession of personal property of another without an underlying agreement, the possessor may become a constructive bailee." *Khan v. Heritage Prop. Mgmt.*, 584 N.W.2d 725, 729–30 (Iowa Ct. App. 1998). Here, Heal came into lawful possession of Anderson's property pursuant

---

[4] The court found it did not need to rule on Anderson's bailment claim because of its ruling on his conversion claim. We may uphold a district court ruling on a ground other than the one upon which the district court relied, so long as the ground was urged in that court. *See King v. State*, 818 N.W.2d 1, 11 (Iowa 2012).

to the court-ordered injunction. "Once a bailment is established, the law imposes specific duties upon bailees to care for the bailor's property while it is in their possession. The degree of care required to be exercised by the bailee depends upon the type of bailment." *Id.* at 730.

The bailment created between Anderson and Heal was gratuitous, and as such, Heal is only liable for the damage to and loss of Anderson's property if he was grossly negligent or acted in bad faith. *See id.* at 730 n.4 (stating "a gratuitous bailment would typically be created if a landlord took possession of property left by a tenant following an eviction," and such a bailment requires the bailee "to use only minimal care toward the property and is usually liable for damage if any gross negligence of bad faith is found"). However, "a conversion action may lie when a bailee makes an unauthorized disposition of the bailor's property." *Theis v. Kalvelage*, No. 14-1568, 2015 WL 7567548, at *4 (Iowa Ct. App. Nov. 25, 2015).

> An absolute and unqualified refusal by the bailee to return or redeliver the property to the bailor, made in derogation of the bailor's title or right to possession, constitutes actionable conversion. Furthermore, the bailee cannot qualify his or her duty to return the bailed property by prescribing conditions not implied by law or contemplated by the parties in the contract of bailment without being guilty of conversion. A bailee is not guilty of conversion, however, where his or her refusal to redeliver the property to the bailor is qualified by conditions that are reasonable and not inconsistent with the bailor's rights, provided that the reason for the refusal to return the item is immediately communicated to the bailor. For example, a refusal to return bailed property is justified when it is accompanied by a demand for payment of charges for which the bailee has a lien.

*Id.* (citation omitted). Both Heal and his son Aaron testified some of Anderson's property was still in the buildings and they would return those items to him. As

such, those items have not been converted by the Heals. The proper remedy, now that the injunction—and thus the bailment—has terminated, is to return any such items.

Because there was no record made by the parties or the court as to which items may have been returned, we remand to the district court for further proceedings. On remand, the district court should determine which items were disposed of by Heal after he obtained the injunction. Any such items have been converted—along with the $7280 in cash taken by Heal—and Heal is to pay damages for those items. *See Murray v. Conrad*, 346 N.W.2d 814, 821 (Iowa 1984) ("The general rule is that the measure of damages for conversation is the fair and reasonable market value of the property at the time of the taking."). Additionally, if there are items that are returned to Anderson that were damaged while in Heal's care as a result of Heal's bad faith or grossly negligent actions, Heal is responsible for the reduced value. *See In re Estate of Martin*, No. 11-0690, 2012 WL 1431490, at *5 (Iowa Ct. App. Apr. 25, 2012) ("Where the bailment is for mutual benefit, the fact the property was damaged while in the bailee's possession creates a presumption the damage is due to the bailee's lack of care. . . . To that end, our case law has established where a gratuitous bailment exists, the bailee is only liable if a reasonable degree of care is not exercised." (citations omitted)).

By remanding this issue to the district court, we are not asking the court to re-determine the values of the listed items. The court already received evidence as to the values of the items and made findings substantially supported by the record. Additionally, although Heal challenges the district court's reliance on

Detling's opinion testimony of the values of various items, we find the district court did not abuse its discretion in doing so. Iowa Rule of Evidence 5.701 provides that a lay witness may provide opinion testimony if the testimony is "[r]ationally based on the witness's perception"; is "[h]elpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "not based on scientific, technical, or other specialized knowledge within the scope of rule 5.702." Detling's testimony about the value of the vehicles was based upon his experience working at the salvage yard, and we believe it falls within the rule.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**